SPENCER, et al. *v.* MAYOR AND BOARD OF ALDERMEN OF YAZOO CITY.

Oct. 13, 1952

No. 38591          3 Adv. S. 55          60 So. 2d 562

*Jno. S. Holmes* and *Henry & Barbour,* for appellants.

*Campbell & Campbell,* and *Bridgforth & Love,* and *W. A. Bacon,* for appellee.

KYLE, J.

This case is before us on appeal from a judgment of the circuit court of Yazoo County affirming the validity of an ordinance adopted by the mayor and board of aldermen of the City of Yazoo City on March 10, 1952, providing for the issuance of $1,700,000.00 of revenue bonds of the city to be issued to raise funds for the

purpose of improving the electric generating, transmission and distribution system of the city.

The record shows that on March 10, 1951, the mayor and board of aldermen of Yazoo City, by an order entered upon its minutes, authorized the public service commission of the city to spend not exceeding $3,000 for the purpose of making a survey of the electric generating, transmission and distribution system of the city and determining the need for enlarging the electric plant and distribution facilities. Burns & McDonnell Engineering Company of Kansas City, Missouri, was employed to make the survey, and its report was filed with the mayor and board of aldermen on July 30, 1951. On October 29, 1951, the mayor and board of aldermen, at an adjourned meeting, adopted a resolution declaring their intention to issue the revenue bonds of the city in the amount of $1,700,000.00, which represented the estimated cost of the contemplated improvements, to raise funds for the purpose of improving the electric generating, transmission and distribution system of the city, and ordered that an election be held on November 27, 1951, for the purpose of submitting to the qualified electors of the city the question whether or not the bonds should be issued. The city clerk and the city election commissioners were ordered to give three weeks notice of the election by publication of such notice in a newspaper published in the city, and it was expressly provided that the election be held, as far as practicable, in accordance with the laws regulating the holding of general elections.

The city election commissioners gave due notice of the election by publication of said notice in the four weekly editions of the *Yazoo City Herald* published on November 1, 8, 15, and 22, 1951, and the election was held on November 27, 1951, as provided in the above mentioned resolution. The election commissioners filed their report with the mayor and board of aldermen at a special meeting of the mayor and board of aldermen on November 29, 1951. The report showed that the total number of

votes cast for the bond issue was 357, and that the total number of votes cast against the bond issue was 282. The report of the election commissioners was ordered spread upon the minutes, and the mayor and board of aldermen determined that the election had resulted in favor of the issuance of the bonds.

On February 25, 1952, the appellants filed with the mayor and board of aldermen a written protest against the issuance of the $1,700,000.00 revenue bonds, and in their protest alleged that the proceedings for the issuance of the bonds were invalid for the reasons (1) that the city had no valid public service commission; (2) that the proceedings for the issuance of the bonds did not conform to the requirements of Chapter 185, Laws of 1936, under the provisions of which it was assumed that the bonds were to be issued; (3) that in the election on the proposed bond issue a three-fifths majority of those voting in the election did not vote for the proposed bond issue; and (4) that the mayor and board of aldermen had undertaken to delegate to the public service commission of the city, an agency created by an ordinance of the mayor and board of aldermen adopted on August 9, 1909, non-delegable powers relating to the management and control of the electric plant and distribution system, which the mayor and board of aldermen had no authority to delegate to a subordinate agency.

After a full hearing on the above mentioned protest the mayor and board of aldermen, on March 10, 1952, overruled the protest and adopted an ordinance formally authorizing and directing the issuance of the bonds. From the order overruling their protest the appellants appealed upon a bill of exceptions to the circuit court. At the April 1952 term of the court the attorneys for the city filed a motion to dismiss the appeal. The cause was heard by the circuit judge upon the bill of exceptions and the records sent up by the mayor and board of aldermen, and at the conclusion of the hearing a judgment was entered affirming the orders of the mayor and board of

aldermen providing for the issuance of the bonds and the order overruling the protest filed by the appellants. From that judgment the appellants prosecute this appeal.

The appellants' attorneys in their brief contend that the proceedings of the mayor and board of aldermen for the issuance of the bonds are invalid for the following reasons:

(1) That the public service commission of the city is an illegal body to which the governing authorities of the city have undertaken to delegate non-delegable powers vested by statute in the mayor and board of aldermen, and that the mayor and board of aldermen have no authority to issue the bonds which they propose to issue so long as the control of the electric light plant and distribution system is in the hands of an illegally constituted public service commission.

(2) That certain mandatory requirements of Chapter 494, Laws of 1950, under which the bonds are to be issued, have not been complied with by the governing authorities of the municipality.

(3) That no bonds can be validly issued under authority of Chapter 494, Laws of 1950, for the reason that the same is violative of the provisions of Section 80 of the State Constitution.

Much of the argument in the appellants' brief revolves around their contention that, at the time of the adoption of the ordinance providing for the issuance of the bonds, the electric power plant and distribution system of the city was being managed and operated by the city public service commission, which had been created in 1909, and which the appellants contend had been created unlawfully; and the appellants contend that the city should not be permitted to issue bonds for 'the purpose of improving the electric power plant and distribution system, while the management and operation of the system remains under the control of such commission. The appellants in their protest against the issuance of the bonds charged that the commission had been created by an

ordinance of the mayor and board of aldermen without statutory authority and that many of the powers delegated to the commission were legislative or discretionary powers, which the mayor and board of aldermen had no right to delegate to a subordinate agency, and that all acts done by the commission were illegal; and the appellants asked that the mayor and board of aldermen formally declare all of said acts to be null and void.

These contentions may be disposed of with only a brief comment.

Neither the mayor and board of aldermen, upon the hearing of the appellants' protest against the issuance of the bonds, nor the circuit court, upon the hearing of the appeal in this case, had a right to declare null and void all acts done by the public service commission of the city since the date of its creation in 1909. Whether the mayor and board of aldermen had a right to create such commission as an agency to manage and operate the city's electric power plant and distribution system at that time is a question that need not be determined and cannot be determined by the court in this proceeding. The commission, at the time the appellants filed their protest, according to the record that we now have before us, was an administrative body which had existed and had exercised the powers and discharged the duties imposed upon it by the mayor and board of aldermen for a period of more than forty years, and in view of that fact it is clear that a declaration by the mayor and board of aldermen at this time to the effect that all acts done or assumed to be done by the commission during that time are null and void would be unauthorized and meaningless.

(Hn 1) If the appellants desire to test the legality of the public service commission as an administrative body, such test should be made by information in the nature of a *quo warranto*, or in some other appropriate proceeding.

The bonds proposed to be issued under the ordinance adopted on March 10, 1952, are revenue bonds authorized

to be issued by Chapter 494, Laws of 1950, Sections 3519-01 to 3519-31, inc., Supplement of Mississippi Code of 1942, which is an act to authorize municipalities to acquire, own, operate, maintain and improve certain revenue producing public utility systems, and to borrow money and issue revenue bonds for the purpose of acquiring and improving such systems. Section 8 of the Act provides that money may be borrowed and bonds may be issued by the municipality ''to acquire or improve any . . . electric generating, transmission or distribution system'' within or without the corporate limits thereof, for the purpose of supplying such municipality with the services and facilities afforded by such system.

In Section 13 of the Act it is expressly provided that, ''Except as hereinafter provided, no bonds shall be issued pursuant to this act until and unless a majority of those qualified electors of the municipality voting on a proposition stating in general terms the maximum amount and purposes of such bonds have approved such issuance at a special election called therefor according to law.''

Section 1 of the Act authorizes the governing authority of any municipality, which owns and operates a revenue producing public utility system, as defined in the act, to create a commission to control, manage and operate such system. It is expressly provided in Section 1, however, that ''nothing in this Act shall affect the status or term of office of any commissioner heretofore appointed under any of the laws hereby repealed, but such commissioners shall continue in office with the power and authority conferred by law.'' And Section 1 of the Act further provides that, ''where the governing authorities of the municipality do not elect to create a commission as herein provided, then any system or systems owned and operated by the municipality shall be controlled and managed by the governing authorities of such municipality, who shall have all the power and authority conferred upon said commission by this act.''

We shall discuss the points argued by appellants' attorneys on this appeal in the order in which they have been presented in the appellants' brief.

(Hn 2) It nowhere appears in the Act that the power to issue bonds for the purpose of acquiring or improving any revenue producing public utility system, as defined in Section 8 of the Act, is in any way contingent upon the creation of a commission to manage and control the system as provided for in Section 1 of the Act. And there is nothing in the Act to support the argument of the appellants' attorneys that the power to issue the bonds in the case that we now have before us is dependent upon the validity of the ordinance adopted by the mayor and board of aldermen in 1909, which provided for the creation of the public service commission mentioned above.

We therefore hold that there is no merit in the contention that the mayor and board of aldermen have no authority to issue the bonds which they propose to issue so long as the control of the electric power plant and distribution system remains in the hands of the public service commission created by the ordinance of 1909. The power to issue the bonds under the Act of 1950 is in no way dependent upon the existence or non-existence of a commission charged with the duty of managing and operating the system which is to be improved out of the proceeds of the sale of the bonds. If the bonds are issued and any question should arise as to the validity of the expenditure of the funds, proper remedies may be invoked to restrain any unlawful expenditure of the funds.

The specific grounds upon which the appellants attack the validity of the proceedings of the mayor and board of aldermen for the issuance of the bonds are (a) that the resolution adopted by the mayor and board of aldermen on October 29, 1951, declaring their intention to issue the bonds did not contain all of the information required by Section 10 of the Act to be set forth in the ordinance authorizing the issuance of the bonds; (b)

that the notice of the election did not contain sufficient information to apprise the voters of the nature of the proposed bond issue and to enable the voters to cast their votes intelligently upon the proposed bond issue; (c) that the resolution ordering the election was not published in full, as required by Chapter 185, Laws of 1936; and (d) that the proposal to issue the bonds did not receive a three-fifths (3/5ths) majority of the votes cast in the election.

After a careful study of the record we are of the opinion that none of the above stated objections is well taken.

Section 10 of the Act requires that the governing authorities of any municipality proposing to issue bonds under the provisions of the Act shall cause an estimate to be made of the cost of the improvements, and the fact that such estimate has been made shall appear in the ordinance authorizing the issuance of the bonds. Section 10 also requires that the ordinance authorizing the issuance of the bonds shall set forth ''a brief description in general terms of the contemplated system or improvement, the estimated life thereof, the said estimated cost thereof, the amount, date, denominations, rate of interest, times and places of payment and other details in connection with the issuance of the bonds,'' and the ordinance ''may contain such covenants and restrictions as may be necessary or desirable to safeguard the interests of the holders of the bonds.'' Section 10 also provides that, ''It shall be plainly stated on the face of each such bond in substance that the same has been issued under the provisions of this Act.'' The above mentioned requirements, however, apply only to the ordinance authorizing the issuance of the bonds.

(Hn 3) The ordinance authorizing the issuance of the bonds, which was adopted on March 10, 1952, contained all of the recitals required in Section 10 of the Act. The appellants' attorneys contend, however, that the same recitals should have been contained in the resolution adopted on October 29, 1951, declaring the intention of the mayor

and board of aldermen to issue the bonds, and in the notice of the election which was published pursuant to that resolution. A sufficient answer to that contention, in our opinion, is that the statute does not require that such recitals appear in the resolution of the mayor and board of aldermen declaring their intention to issue the bonds or in the notice of the election.

(Hn 4) The rule relating to the amount of information that should be contained in the notice of an election of this kind is stated in 44 C. J., p. 1198, Municipal Corporations, par. 4171 (b), as follows: ''The proposition submitted should comply with statutory requirements; be sufficiently definite to appraise the voters with substantial accuracy of what they are called upon to approve; and be submitted in such a way as to obtain a full and fair expression of the will of the voters on its merits. Within the limitations imposed by the foregoing requirements, the duty of determining the particular phraseology in which the question shall be submitted is cast upon the municipal authorities. It is sufficient if the question submitted to the electors is the question required by law to be submitted, or if there is a substantial compliance with statutory formalities; the bonds cannot be held void because of a failure to submit some detail not required by law to be submitted.''

(Hn 5) Section 13 of the Act under which the bonds are to be issued provides that ''no bonds shall be issued pursuant to this Act until or unless a majority of those qualified electors of the municipality voting on a proposition stating in general terms the maximum amount and purposes of such bonds have approved such issuance at a special election called therefor according to law.'' The proposition to be submitted to the qualified electors is to be stated ''in general terms,'' and only ''the maximum amount and the purposes of such bonds'' need be stated in the resolution declaring the intention to issue the bonds and in the notice of the election. These requirements were met in the case that we now have before us.

The resolution declaring the intention of the mayor and board of aldermen to issue the bonds, the notice of the election and the ballot used in the election plainly stated that the bonds proposed to be issued were electric system revenue bonds, that the maximum amount of bonds proposed to be issued was $1,700,000, and that the bonds were to be issued to raise funds for the purpose of improving the electric generating, transmission and distribution system of the city. We therefore hold that the notice was sufficient and that the proposal to issue the bonds was properly submitted to the qualified electors for their approval or disapproval.

The appellants' attorneys say that the entire resolution declaring the intention of the mayor and board of aldermen to issue the bonds should have been published in accordance with the formula prescribed in Section 4 of Chapter 185, Laws of 1936. But there is no merit in this contention for the reason that the bonds were not to be issued under the provisions of Chapter 185, Laws of 1936, and the provisions of that Act are not applicable to the proceedings that we now have under review.

(Hn 6) Chapter 494, Laws of 1950, is silent as to the manner in which notice of the election shall be given. But the Legislature, at its 1950 Session, passed House Bill No. 73, Chapter 493, Laws of 1950, which was an Act to provide a uniform system for the issuance and sale of municipal bonds payable out of funds derived from ad valorem tax levies; and in that Act the Legislature expressly provided that notice of the election on a proposed bond issue should be published once a week for at least three consecutive weeks in a newspaper published in the municipality, and that the first publication of such notice should be made not less than 21 days prior to the date fixed for such election, and the last publication should be made not more than seven days prior to such date. Similar requirements were inserted in other acts passed by the Legislature at the 1950 Session providing uniform meth-

ods of issuing bonds for counties and school districts. Where a statute is silent as to the notice which should be given in a matter of this kind, it becomes the duty of the court to resort to and apply such election laws as bear the closest analogy to the election provided for under the statute presently being considered. 59 C. J., p. 1041, Statutes, par. 619 (d). Simpson County v. Burkett, et al., 178 Miss. 44, 172 So. 329. The notice published in the case that we now have before us was published in conformity with the requirements of Section 5 of Chapter 493, Laws of 1950; and we think that the notice thus given was sufficient.

(Hn 7) Objection was made at the hearing before the mayor and board of aldermen that the election failed to carry because a three-fifths (3/5ths) majority of the qualified electors voting in the election did not vote in favor of the proposed bond issue. But there is no merit in this contention, for the reason that Section 13 of the Act under which the bonds are to be issued requires only a majority of the qualified electors voting on the proposition to vote in favor of the issuance of the bonds.

(Hn 8) Finally, the appellants' attorneys argue in their brief that Chapter 494, Laws of 1950, under which the bonds are to be issued, is unconstitutional, for the reason that it violates Section 80 of the State Constitution. The appellants' attorneys admit, however, that this contention appears to have been decided against them in the case of Turner, et al. v. City of Hattiesburg, 98 Miss. 337, 53 So. 681, in which the Court held that Section 80 of the State Constitution is not self-executing, that it requires legislation to put it into effect, and that it is for the Legislature to say what constitutes abuse of such powers of a municipality, and to provide checks thereon. Section 10 of Chapter 494, Laws of 1950, expressly provides that ''no bond issued pursuant to this Act shall constitute an indebtedness of a municipality within the meaning of any statutory or charter restriction, limitation or provi-

sions." The principal of and the interest upon the bonds are payable solely from the revenues to be derived from the operation of the system acquired or improved with the proceeds of the sale of the bonds, and the taxing power of the municipality issuing the same is not pledged to the payment of the bonds or interest thereon.

We find no error in the record that would justify a reversal of the judgment of the lower court, and that judgment is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Alexander, Lee* and *Ethridge, JJ.,* concur.