HUTSON v. MILLER.*

(Division B. Dec. 12, 1927.)

[114 So. 820. No. 26704.]

1. MUNICIPAL CORPORATIONS. *Municipal election contests are governed by statute relating to election of county officers (Hemingway's Code 1927, sections 7024, 8077).*

Under Code 1906, section 3439 (Hemingway's Code 1927, section 7024), contested municipal election cases are governed by Code 1906, section 4186 (Hemingway's Code 1927, section 8077), which provides for contests of election of county officers.

2. MUNICIPAL CORPORATIONS. *Contestant for municipal office need not go through form of qualifying for office until after contest has been determined (Hemingway's Code 1927, sections 2991, 7020, 7024, 8077).*

Where election of town officers was held as provided by Laws 1922, chapter 219 (Hemingway's Code 1927, section 7020), and returns were made to secretary of state, who issued contestee a commission as mayor, under Code 1906, section 3439 (Hemingway's Code 1927, section 7024), contestant for office of mayor was not required, under Laws 1924, chapter 230 (Hemingway's Code 1927, section 2991), to go through statutory form of taking oath of office and giving official bond until after contest had been determined in his favor, since Code 1906, section 4186 (Hemingway's Code 1927, section 8077), should be read into and treated as part of section 2991.

3. ELECTIONS. *Where contestant's petition stated facts showing election was fraudulent, voters could testify that votes had been, fraudulently changed from one candidate to another.*

Where contestant's petition did not charge fraud in election in so many words, but, if facts stated were true, election was neces-sarily, fraudulent, voters were competent to testify that their votes had been fraudulently changed from one candidate to another.

4. FRAUD. *Fraud vitiates everything.*

Fraud vitiates everything it enters into.

---

*Corpus Juris-Cyc. References: Elections,· 20CJ, p. 238, n. 34 New; Fraud, 26CJ, p. 1059, n. 7 New; Municipal Corporations, 43CJ, p. 618, n. 58; p. 636, n. 88 New: p. 638, n. 32 New.

APPEAL from circuit court of Humphreys county.
HON. S. F. DAVIS, Judge.

Action by M. H: Miller to contest the election of F. H. Hutson as mayor of the town of Isola. From a judgment for contestant, contestee appeals. Affirmed.

*Montgomery & Montgomery,* for appellant.

· An election contest involves the eligibility and· qualification of the contestant for the office. 9 R. C. L., secs. 147, 1157. We want to be perfectly frank with the court about this proposition. Some of the text books indicate the questions as to eligibility and qualification can only be raised in a *quo warranto* proceeding. 20 C. J., secs. 275, p. 217. We are also not unmindful of the expressions by way of *dicta* in several of our own decisions. *Pradat* v. *Ramsey,* 47 Miss. 32; *Loposser* v. *State,* 110 Miss.· 240, 70 So. 345. However, it will be noted that statutes in other states are probably somewhat different from ours and this no doubt accounts for the foregoing statement from Corpus Juris. Furthermore, the expressions of our court cited above were mere expressions of opinion in a case wherein the question of eligibility and qualification ·of the contestants was not involved.

There has been, however, one case of an election contest involving this very question.   Our supreme court went into the matter in detail, discussed the question fully, and reached a clear cut decision that the ''right'' to the office is involved in a contest under our· statute. It is true that this case was decided under the Code of 1871, but the election contest statute at that time, and the present election contest statute are almost identical except that the jurisdiction of the contest was formerly conferred upon the justice court.   See *Sublett* v. *Bedwell*, 47 Miss. 266.

*If disqualification of contestant to hold office be raised in an election contest, then the declaration here was insufficient, and appellant's demurrer thereto should have been sustained, because the declaration failed to allege that the contestant had qualified for the office.*   Sections 5995 (3435), Hemingway's 1917 Code; *Water Valley* v. *State*, 103 Miss. 645, 60 So. 576; Secs. 5996 (3436), Hemingway's 1917 Code; *Bouregois* v. *Laizer*, 77 Miss. 146, 25 So. 153; *State* v. *Cresswell*, 117 Miss. 795, 78 So. 770; Hemingway's 1921 Sup., secs. 2797 (3459), and 2797a; Secs. 2991 (2797), Hemingway's 1927 Code; *Andrews* v. *Covington*, 69 Miss. 740, 13 So. 853; *State ex rel. Jones* v. *Lyon*, 110 So. 243; *Coker* v. *Wilkinson*, 142 Miss. 1, 106 So. 886.

*Oral testimony as to the purity and integrity of the actual ballots themselves should have been excluded because same was utterly foreign and not responsive to the grounds of contest set up in the declaration.*   Secs. 8077 (6820), Hemingway's 1927 Code; *Pradat* v. *Ramsey*, 47 Miss. 24.

*Chapman, Moody & Johnson,* for appellee.

It is, of course, conceded that the right to contest an election, and the procedure therefor, is purely of statutory origin.   Where, as was the case in the town of Isola; there is only one election precinct, a municipal election

is conducted by three commissioners, appointed by the mayor and board of aldermen. Returns of the election are.made by the commissioner to the secretary of state, whose duty it is to issue a commission to the person returned as elected to a municipal office. Hemingway's Code 1927, secs. 7022 (5997); Hemingway's Code 1927, secs. 7024 (5999). When, and not until, a commission is issued by the secretary of state to the person returned as elected to a municipal office, he must qualify on or before the first Monday of January, after such election. Hemingway's Code 1927, section 7020.

To qualify, or have the right to qualify, one must first be elected, that is receive a majority of the votes cast at the election. But, in addition, there must be an adjudication of that fact by the commissioners of the election, and, on the adjudication, so made by the commissioners, a commission must issue to the person elected. Then, and not until then, has one the right to qualify. The first step, in order to qualify, is the receipt of a majority of the votes cast at the election. This fact alone does not give the person elected a right to the office. The returns of the election commissioners may show that such a person received a majority of the votes cast, when as a fact, such majority was for another. That the will of the majority of the qualified electors may not be defeated, it is provided, in the case of a county office, that: ''A person desiring to contest the election (not his right to the office) of another person returned as elected to any office, within any county, may, within twenty days after the election, file a petition in the office of the clerk of the circuit court of the county, setting forth the grounds upon which the election is contested,'' etc.—Parenthesis ours. Hemingway's Code 1927, sec. 8077; Hemingway's Code, sec. 7024, expressly provided that: ''All of the provisions of law on the subject of state and county elections, so far as applicable, shall govern municipal elections.'' The clause, just quoted, in identical words, is a part of section 3034, Code 1892, and section

8077, Hemingway's Code 1927, *supra,* is identical in terms with section 3679, Code 1892. See *Shines* v. *Hamilton,* 87 Miss. 384, construing sections 3034 and 3679, Code 1892.

The attorneys for the appellee failed to note the distinction between the right to contest an election, and the procedure prescribed for the adjudication of that right, and the right to an office, and the procedure prescribed for the adjudication of that right. Section 7024, Hemingway's Code 1927, when construed in connection with section 8077 of same prescribes the procedure, or remedy, where the right to contest an election is involved. The procedure, or remedy, is prescribed by chapter 61 on *Quo Warranto* where the right to an office is involved. The distinction is obvious when it is considered that one is not entitled to an office merely because one received a majority of the votes cast at the election. There must be an adjudication of that fact, and, on such an adjudication, a commission must issue. If there is a wrong adjudication of that fact, that is, the fact of election, by the commissioners and a commission is issued, such an adjudication may be reversed by the procedure prescribed by section 8077, *supra.* That is, when such a commission is issued by the Governor, the person, thus elected, when he qualified, that is, by entering into bond, if one is required, and taking the oath prescribed, has a right to the office. Then, and only then, is one contesting an election entitled to the office. Surely it would be an idle ceremony for one to endeavor to qualify as an officer when there had been no adjudication, either by the commissioners, or by a court of competent jurisdiction following the procedure prescribed in the statute, that he was elected.

The remedy (to contest an election) is purely statutory. The statute itself does not prescribe any condition on the right to pursue this remedy. If it does not, by what authority would such a condition be imposed.

Even if the appellee had received a majority of the votes cast at the election—and the jury found this fact in his favor—and even if he had made the bond, if one was required, and had taken the oath of office, he still would not, in the absence of a commission issued by the secretary of state, or the Governor, have been entitled to the office of mayor. Therefore, if his right to contest the election was based on his right to the office, no candidate could contest an election because he could never get a commission until the election commissioners, or the circuit court had adjudicated the facts of his election.

The right of an office depends (1) on an election, (2) an adjudication of that fact, (3) a commission issued pursuant to, and based on the adjudication and (4) the oath and bond, if one is required. If the oath and bond were required as a condition precedent to a contest of an election, then there could never be a contest, because the oath and bond follows the commission, and the commission follows the adjudication, and the adjudication results from the contest. The matter may be thus stated: The election, an adjudication of that fact, a commission based on the adjudication, and the oath and bond, if one is required, which follows, and is based on the commission. The oath and bond is of no avail without the commission; the commission grows out of the adjudication, and the adjudication grows out of the contest. The very thing which the contest seeks to have made is an adjudication, that is whether the contestant was, or was not, elected to the office. In the appellant's brief, reference is made to *Bourgeois* v. *Laizer,* 77 Miss. 146. The report of this case indicates that it was a *quo warranto* proceeding in the name of the state on the relation of the appellant against the appellee. No point was made that the proceeding was not under section 3679, Code 1892. See, also, *Rich* v. *McLauren,* 35 So. 337.

If the law, as stated by this court, is that the right of one to an office is dependent on an election, an adjudication of that fact, and a commission issued pursuant to,

and based on, the adjudication, then it follows that one, duly elected, does not forfeit his right to the office, if, by the wrongful act of the election commissioners he did not obtain the adjudication, to which he was entitled, and the commission issued pursuant to it, provided, within the time, and by the procedure prescribed by the statute, he succeeded in doing so. That, even in a *quo warranto* proceeding, was the holding of this court, when, by the wrongful act of the chancery clerk, a duly commissioned levee commissioner was prevented from filing his oath and bond as such. *State* v. *Baggett,* 110 So. 240; *State* v. *Lyon,* 110 So. 243.

If the ballots produced as being the ballots of these witnesses were not their ballots—and the jury found that they were not—then these bogus or impure ballots could be questioned by oral testimony; otherwise the purity of the ballot which each witness actually cast and not the ballot produced, and which was not cast, is that which is vital.

Argued orally by *V. B. Montgomery,* for appellant, and *C. C. Moody,* for appellee.

ANDERSON, J., delivered the opinion of the court.

The appellee brought this action in the circuit court of Humphreys county to contest the election of appellant as mayor of the town of Isola, in that county. There was a verdict and judgment in appellee's favor, from which judgment the appellant prosecutes this appeal.

Appellant and appellee were rival candidates for mayor of the town of Isola at the regular election, on the 14th of December, 1926, for officers of that town. The election commissioners, who were also managers of the election, returned to the secretary of state that appellant had been elected; that appellant had received forty-four votes for the office, and appellee forty-two votes. Thereupon the secretary of state issued to appellant a commission

as required by statute. Within twenty days after the election, a petition was filed by appellee in the court below, in which it was averred, in substance, that appellee had been elected mayor instead of appellant. Appellant demurred to the petition, which demurrer was overruled. An issue was made up and submitted to the jury as to whether appellant or appellee had been elected to the office. The jury in their verdict found that appellee had received a majority of the votes cast in the election. Upon that verdict judgment was rendered by the court in the form provided by the governing statute.

The evidence showed that, without counting four sealed ballots cast by W. H. Garrard, G. G. Ingram, W. A. Switzer, and Mrs. W. A. Switzer, appellant received forty-one votes, and appellee forty-one votes. The four sealed ballots were placed in an envelope, which was sealed. Before doing so, the name of the elector casting each of the ballots was written thereon by E. A. Blount, one of the managers of the election, who was a son-in-law of appellant. These sealed envelopes were not opened nor the ballots therein counted until the morning after the election, when the four envelopes were opened, and the ballots counted; there being three votes for appellant, and one for appellee. The evidence tended to show: That on the evening of the election, after the polls were closed, the eighty-two ballots which were counted, the unused ballots, the four sealed ballots which were not counted, and the tally sheets, were put in the ballot box, which was locked. The only key to the ballot box was retained by E. A. Blount, and the ballot box was by Blount and one of the other commissioners locked up in the safe in the store of appellant. That E. A. Blount was the only one who knew the combination to the safe, and the only one who could enter it after it was locked. The evidence tended to show that the ballot box and the key to it were in the exclusive possession of Blount the night following the election. On the trial Blount produced the four ballots cast by Mr. and Mrs. Switzer, Gerrard, and Ingram,

and testified that they were the identical ballots cast, and placed in the envelopes as above stated. Mr. and Mrs. Switzer and Ingram testified as witnesses in the cause. Each testified that he made out his ballot for mayor by marking a cross-mark in ink opposite the name of the candidate for mayor he desired to vote for. Garrard identified one of the ballots as being the one cast by him, which showed that it was voted for the appellee. Ingram testified that he voted the ballot shown him, or one like it. Mr. and Mrs. Switzer both testified that the ballots purporting to have been cast by them were not in fact so voted; that they voted for appellee, and not for appellant.

The following instructions were given for appellee:

"No. 1. The court instructs the jury that if you believe from the evidence that the contestant, M. H. Miller, received the greatest number of legal votes cast for mayor, which were cast at the regular municipal election held in the town of Isola on the 14th of December, 1926, then your verdict must be in favor of M. H. Miller, the contestant.

"No. 2. The court instructs the jury that, if you believe from the evidence that W. A. Switzer, Mrs. W. A. Switzer, G. G. Ingram, and W. H. Garrard voted, for M. H. Miller for mayor at the election held on the 14th day of December, 1926, by making a cross-mark opposite the name of said Miller, on an official ballot used at the election, and that said ballots were delivered to the managers of the election and accepted by them, then you will find for M. H. Miller, the contestant.

"No. 3. The court instructs the jury that the law requires the ballot box to be secured by a good and substantial lock, and, if an adjournment shall take place after the opening of the polls, and before all the votes shall be counted, the ballot box shall be securely locked so as to prevent the admission of anything into it or the taking of anything from it during the time of adjournment; and the box shall be kept by one of the managers,

and the key by another manager, and the manager having the box shall carefully keep it, and neither unlock nor open it himself nor permit it to be done, nor permit any person to have access to it during the time of adjournment. The failure to perform this duty, if such failure appeared from the evidence, does not, of course, vitiate the ballots, but such failure, if the evidence so discloses, may be considered by you in connection with all of the evidence.''

The following instructions were given for the appellant:

''No. 1. The court instructs the jury for the defendant that it is not a question of how the voter intended to vote, or how he thinks he voted, but the test is how the voter actually voted, and, unless you believe from a preponderance of the testimony that, after the contested votes had been voted and placed in sealed envelopes, the said votes or some of them were changed, altered, forged, or substituted before being counted by the election commissioners on the following morning, then the ballots counted by the election commissioners are in law and in fact the true vote of the persons voting same, and it is the sworn duty of the jury to return a verdict for the defendant, and this is true, even though you further believe from a preponderance of the testimony that the said voters actually intended to cast their ballot or ballots for M. H. Miller.

''No. 2. The court instructs the jury for the defendant that the certificate of the election commissioners and the issuance of a commission by the secretary of state is *prima-facie* correct, and continues throughout the whole trial until overthrown by testimony; and unless, therefore, the contestant, M. H. Miller, affirmatively shows by a preponderance of the evidence that he has received a majority of the legal votes actually cast, then he can never succeed, and you will find a verdict for the defendant, F. H. Hutson.

"No. 3.  The court instructs the jury for the defendant that the actual ballots cast at the election are the best evidence as to whom the said ballots were cast for, and that, unless you believe from a preponderance of the evidence in this cause that the four ballots in question were changed or other ballots substituted therefor, then you will find a verdict for the defendant.

"No. 4.  The court instructs the jury for the defendant that the burden of proof is upon the plaintiff, M. H. Miller, to make out his case by a preponderance of the evidence shows that M. H. Miller received the greatest number of votes actually cast at the election you will find a verdict for the defendant, F. H. Hutson.

"No. 5.  The court instructs the jury for the defendant that officers of an election are presumed to properly discharge the duties of their office, and that, in order to overcome such presumption, it is necessary that you be convinced by a preponderance of the evidence that said officers did not properly discharge their duties.

"No. 6.  The court instructs the jury for the defendant that the intention of the voter is immaterial, and that the ballots cast by the voter is the test as to whom the said ballots should be counted for, and that in this case, unless the four ballots were changed by the election commissioners or some other person, then you will find a verdict for the defendant, even though you believe from the evidence that for the four electors in said election all intended to vote for M. H. Miller."

Appellant contends that, even if it be true that appellee was legally elected mayor of the town of Isola, he was not entitled to the office, because he failed to qualify for the office before the beginning of the term for which he was elected; that an election contest involves the eligibility and qualification of the contestant, while the appellee contends that there is involved in the contest the question only as to which of the contestants received a majority of the legal votes cast in the election; and that, therefore, the contestee cannot raise the question of the

eligibility of the contestant to the office. The view we take renders it unnecessary to decide this question, for we are of opinion that appellee was not required to go through the statutory form of qualifying for the office until after it was decided by the courts he was entitled to the office.

Section 219, Laws of 1922 (Hemingway's Code, section 7020), provides as follows:

"A general municipal election shall be held in each city, town and village on the second Tuesday of December, A. D. 1906, and every two years thereafter for the election of all municipal officers elected by the people. The officers elected shall qualify and enter upon the discharge of their duties on the first Monday of January after such general election and shall hold their offices four years and until their successors are duly elected and qualified. Provided, however, that in municipalities operating under the acts of 1912, with a population of more than ten thousand and less than fifteen thousand, bordering on the Gulf of Mexico, the election shall be the second Monday of August."

Section 3439, Code of 1906 (Hemingway's Code 1927, section 7024), is in this language:

"All returns of municipal elections shall be made to the secretary of state, and the secretary of state shall issue commissions to all persons elected to municipal offices under the provisions of this chapter. All the provisions of law on the subject of state and county elections, so far as applicable, shall govern municipal elections."

Section 2991, Hemingway's Code 1927 (chapter 230, Laws 1924), follows:

"If any person elected or appointed to any state, state district, levee board, county, county district or municipal office, shall fail to qualify as required by law on or before the day of the commencement of his term of office, or for any cause any such officer shall hold over after his regular term of office expires under the authority given

him to hold over until his successor is appointed or elected and qualified, a vacancy in such office shall occur thereby, and it shall be filled in the manner prescribed by law, as provided by section 103 of the Constitution for filling vacancies in such offices, unless the failure to qualify arises from there being no officer to approve the bond of such officer elect, and except the Governor Elect, when the legislature fixes by resolution the time of his installation.''

Contests of the election of county officers are governed by section 4186, Code of 1906 (Hemingway's Code 1927, section 8077), which follows:

''A person desiring to contest the election of another person returned as elected to any office within any county, may, within twenty days after the election, file a petition in the office of the clerk of the circuit court of the county, setting forth the grounds upon which the election is contested; and the clerk shall thereupon issue a summons to the party whose election is contested, returnable to the next term of the court, which summons shall be served as in other cases; and the court shall, at the first term, cause an issue to be made up and tried by a jury, and the verdict of the jury shall find the person having the greatest number of legal votes at the election. If the jury shall find against the person returned elected, the clerk shall issue a certificate thereof; and the person in whose favor the jury shall find shall be commissioned by the Governor, and shall qualify and enter upon the duties of his office. Each party shall be allowed ten peremptory challenges, and new trials shall be granted and costs awarded as in other cases. And in case the election of district attorney be contested, the petition may be filed in any county of the district or in any county of an adjoining district within twenty days after the election, and like proceedings shall be had thereon as in the case of county officers, and the person found to be entitled to the officer shall qualify as required by law and enter upon the duties of his office.''

It will be observed that the last clause of section 3439, Code of 1906 (Hemingway's Code 1927, section 7024), provides that:

"All the provisions of law on the subject of state and county elections, so far as applicable, shall govern municipal elections."

Construing these statutes together, we think it plain that contested municipal election cases are governed by the same statute which provides for contests of the election of county officers (section 4186, Code of 1906 [Hemingway's Code 1927, section 8077]). The latter section provides, among other things, that:

"If the jury shall find against the person returned elected, the clerk shall issue a certificate thereof; and the person in whose favor the jury shall find shall be commissioned by the Governor, and shall qualify and enter upon the duties of his office."

We think this provision of the statute should be read into and treated as a part of section 3459, Code of 1906 (Hemingway's Code 1927, section 2991), which provides that:

"If any person elected or appointed to any state, state district, levee board, county, county district or municipal office, shall fail to qualify as required by law on or before the day of the commencement of his term of office, . . . a vacancy in such office shall occur thereby."

So construing these two statutes, they mean that a contestant for a county or municipal office is not required to go through the statutory form of taking the oath of office and giving an official bond, where one is required, until after the contest has been determined in his favor. He is not entitled to a commission until then, nor to enter upon the duties of the office. It would be a vain and useless thing to require of a contestant in such a case that he go through the statutory formalities of qualifying for the office. The election commissioners adjudicated that appellant was entitled to the office, and so certified to the secretary of state, who, accordingly, commissioned

appellant as the duly elected mayor of the town of Isola.
Appellant thereupon went through the statutory form of
qualifying for the duties of the office. What was the use
of appellee going through the same form until it had been
adjudicated by the courts that he was entitled to the of-
fice? We see no necessity for it.

We do not think any of the authorities relied on by ap-
pellant are controlling in his favor.

Appellant contends that it was not competent under
the law for the witnesses Garrard, Ingram, and Mr. and
Mrs. Switzer to impeach their own ballots; that appellee
did not charge fraud in the election.

Appellee's grounds for contest were set out in his pe-
tition as follows:

"There were cast for F. H. Hutson, as mayor, forty-
one votes, as to which there was no question, and there
were cast for your petitioner, as mayor, forty-one votes,
as to which there was no question. On the day of the
said election W. H. Garrard, Mrs. W. A. Switzer, W. A.
Switzer, and G. G. Ingram, all of whom were qualified
electors of the said town of Isola, appeared and offered
to vote, but E. A. Blount, one of the said commissioners
(and also a son-in-law of F. H. Hutson), challenged their
right to vote, on the ground that each of them were not
properly registered; however, the said commissioners
permitted the above-mentioned persons to vote by each
marking his or her ballot which was placed in an envelope
and sealed, and on which the name of each was indorsed.
Each one of the above-mentioned persons voted for your
petitioner, as mayor, by making a cross-mark in ink op-
posite the name of your petitioner, appearing on said
ballot as a candidate for mayor, and which said ballots
were not counted with the other eighty-two ballots when
counted; there being in all eighty-six votes cast at said
election. Your petitioner, therefore, states that, of the
total ballots cast at the said election on the day afore-
said by the qualified electors of the town of Isola, forty-
five votes were for your petitioner, as mayor, and forty-

one votes were for the said F. H. Hutson, as mayor, giving your petitioner a majority of four legal ballots cast at the said election, and petitioner was therefore elected mayor of said town. Notwithstanding the result as above stated, the commissioners of said election reported to the secretary of state that F. H. Hutson was duly elected mayor of the said town, and a commission has been duly issued to him, whereas, in truth and in fact, your petitioner was duly elected mayor of the said town of Isola at the election aforesaid.''

It is true that appellee's petition did not charge fraud in the election in so many words, but, if what was therein stated be true (and the jury so found), the election was necessarily fraudulent. No authorities are cited by appellant to sustain the proposition that in such a contest the voter is not competent to show that his vote has been fraudulently changed from one candidate for the office involved to another. We cannot conceive of any reasonable ground upon which any court should so hold. Fraud vitiates everything it enters into. If the voter were barred from testifying that his ballot had been fraudulently changed, in many cases the contestant for an office would be without an adequate remedy to enforce his rights.

We are of opinion that the issue was fairly submitted to the jury by the instructions given for the respective parties. We find no harmful error committed in the trial of the cause.

*Affirmed.*