416 So.2d 6 (1982)
W.L. POTTER, Appellant,
v.
Harrel F. BOLDEN, Appellee.
No. YY-267.
District Court of Appeal of Florida, First District.
June 4, 1982.
Rehearing Denied July 22, 1982.
Gary M. Ketchum and James C. Conner, Jr., Tallahassee, for appellants.
Guyte P. McCord, III, of Spector, Tunnicliff & McCord, Tallahassee, for appellees.
OWEN, WILLIAM C., Jr. (Retired), Associate Judge.
In this Liberty County election case, the decisive issue is whether the trial court may invalidate all 361 absentee ballots cast in the election on the conclusion that fraud and illegality were so pervasive as to taint the entire absentee voting procedure when (1) the fraud and other illegal activities in connection with the absentee ballots were on the part of individuals who were neither candidates nor election officials, (2) the court specifically found only 47 of the 361 absentee ballots to be invalid, and (3) the number of invalid ballots was insufficient to affect the results of the election. We think not, and reverse.
In the second primary election for Liberty County School Board held October 5, 1978, appellee, Harrel F. Bolden, received 18 votes more than appellant, W.L. Potter, on the precinct machine count. However, when the 361 absentee ballots were counted and added to the machine totals, Potter had defeated Bolden by 99 votes.
Bolden (together with two other candidates)[1] brought this action to contest the election, pursuant to § 102.168, Fla. Stat. (1977). At trial, plaintiffs presented testimony from approximately 75 witnesses who testified concerning widespread practices of absentee voting irregularities, including vote buying and other pervasive and conspicuously corrupt election practices. On this evidence, the court made the following findings and conclusions:
Forty-six witnesses testified candidly that they voted absentee ballots in this election and admitted they had been paid monetary consideration for their vote; many had no idea who they voted for nor even bothered to mark their own ballot. One party marked the absentee ballot of her son under her belief that she had the *7 authority under a "power of attorney" which authorized her to vote although he was stationed overseas in the Armed Forces. A number of the same witnesses appearing on the "bought ballots" were also noted to be subscribing witnesses on a number of other absentee ballots. All in all, the witnesses painted a picture of promiscuous vote buying and other conduct on the part of certain individuals indicating intentional wrongdoing and gross negligence, all of which adversely affected the integrity of the election.

Boardman v. Esteva, 323 So.2d 259 (Fla. 1976), outlined the factors to be considered in weighing the seriousness of irregularities occurring in elections:
"(a) the presence or absence of fraud, gross negligence, or intentional wrongdoing;
(b) whether there has been substantial compliance with the essential requirements of the absentee voting laws; and
(c) whether the irregularities complained of adversely affect the sanctity of the ballot and the integrity of the election."
When measured against the above criteria, it is apparent that this election held in Liberty County falls woefully short of constituting a free expression of the electorate of that County.
"The general rule is that where the number of invalid absentee ballots is more than enough to change the result of the election, then the election shall be determined solely upon the basis of machine vote." Frank v. State ex rel Turk, 160 Fla. 394, 35 So.2d 10 (1948) [sic]; Boardman v. Esteva, supra.

... . [T]he fraud and illegal activities on the part of certain individuals were so conspicuously corrupt and pervasive that it has tainted the entire absentee voting procedure in this election. All absentee votes should be invalidated and none counted in this election. This is a harsh judgment but none the less is indicated. See Lopez v. Holleman, [219 Miss. 822] 69 So.2d 903 (Miss. 1954). Having thrown out all absentee ballots, the winners of the election are determined solely by the precinct machine votes. The tabulation of this vote shows all Plaintiffs to be winners in their respective races.
The individual Defendants are not charged with being personally responsible directly or indirectly, with the fraudulent practices alleged to have occurred in the election and there was no evidence suggesting they were involved. No doubt exists but that most of the questionable electioneering practice was the work of overzealous supporters trying to get their candidate elected.
Boardman v. Esteva, 323 So.2d 259 (Fla. 1976), cited in the trial court's final judgment, is the latest expression of the Supreme Court on the effect of irregularities in the absentee voting procedure. The trial court correctly recognized the general rule stated in Boardman, that where the number of invalid absentee ballots is more than enough to change the result of the election, then the election shall be determined solely upon the basis of the machine vote. The logical corollary of this general rule is simply that where the number of invalid absentee ballots is not sufficient to change the result of the election, all absentee ballots do not have to be invalidated. Referring only to the Bolden-Potter race, it is clear that the 47 absentee ballots which the court specifically found to be invalid would not have changed the result of the election.
Appellee argues that in addition to the 46 "bought" ballots and the one invalid ballot marked by a mother for her son in the Armed Forces, five other ballots were "likely bought," 70 others were witnessed by the same persons who had witnessed the "bought" ballots and 10 others were witnessed by individuals who had no contact whatever with the respective voters. Accepting this argument as a fair summarization of the evidence relating to these additional absentee ballots, we think it apparent that the trial court found it sufficient, at most, only to raise a strong suspicion concerning their validity, since he failed to find specifically that any of them were invalid. Granted the evidence of the malodorous *8 election activities described in the final judgment may have caused the trial court to sense intuitively the pervasive nature of the corruption although unable to identify with specificity the precise number of additional invalid ballots. But we think that neither intuition nor suspicion is a valid basis upon which to disenfranchise the voters who cast the other 314 absentee ballots.
We hold that before all absentee ballots cast in a single-county election may be declared invalid, there must be a specific finding of invalidity as to a sufficient number of ballots more than enough to change the result of the election. Absent such an objective standard, the existence of any evidence of absentee voting corruption would permit a trial court's subjective finding (of pervasive corruption tainting the entire absentee voting procedure) to become unassailable on appellate review.
The trial court cited Lopez v. Holleman, 219 Miss. 822, 69 So.2d 903 (1954), upon which appellee also relies. The cited case is clearly distinguishable in that it involved fraud on the part of the election officials, the very guardians of the ballot box. That such presented a case different from where there were irregularities in the conduct of the election or fraud by a candidate or outside conspirators, was expressly recognized in the Lopez opinion.
While the foregoing is dispositive of this case, we have nonetheless examined appellant's remaining points and have found them severally to be without merit.
The judgment of ouster of appellant, W.L. Potter, is reversed, and upon remand judgment shall be entered declaring W.L. Potter entitled to the office to which he was duly elected.
Reversed and remanded.
MILLS, J., concurs.
WENTWORTH, J., dissents without opinion.
NOTES
[1] This appeal is concerned only with the Bolden-Potter election contest.