452 So.2d 564 (1984)
Harrel F. BOLDEN, Petitioner,
v.
W.L. POTTER, Respondent.
No. 62461.
Supreme Court of Florida.
June 28, 1984.
*565 Guyte P. McCord, III, and Gregory D. Smith of Macfarlane, Ferguson, Allison & Kelly, Tallahassee, for petitioner.
Gary M. Ketchum and James C. Conner, Jr., Tallahassee, for respondent.
OVERTON, Justice.
This is a petition to review Potter v. Bolden, 416 So.2d 6 (Fla. 1st DCA 1982), an election fraud case, in which the trial court found that the buying of absentee-ballot votes was so pervasive that it tainted the entire absentee-voting procedure in a Liberty County School Board election. The district court of appeal reversed on the ground that the trial court did not make a specific finding of invalidity of a sufficient number of ballots to change the result of the election. We find conflict with our decision in Boardman v. Esteva, 323 So.2d 259 (Fla. 1975), cert. denied, 425 U.S. 967, 96 S.Ct. 2162, 48 L.Ed.2d 791 (1976).[1] We quash the district court decision and direct that the trial court judgment be reinstated.
The following are the relevant facts. Harrel F. Bolden and W.L. Potter were opposing candidates in a 1978 election for the Liberty County School Board. In the election Bolden received 18 votes more than Potter in the voting machine count. There were 361 absentee ballots cast in the election, from which Potter received 239 votes and Bolden, the winner on the machine ballots, received only 122 votes. As a result, Potter won the election by 99 votes. Bolden then proceeded to bring this suit contesting the election pursuant to section 102.168, Florida Statutes (1977). At the trial Bolden presented approximately 75 witnesses who testified about corrupt election practices including the sale of votes. The record reflects that 46 electors admitted that their ballots had been bought and that 70 additional ballots were witnessed by the same persons who had witnessed the bought ballots and conducted the organized vote-buying operation. In addition, 10 other ballots were witnessed by individuals who had no contact with the respective voters and no independent knowledge of such voters or the nature of their signatures. The individual candidates were not charged with being personally responsible for the fraudulent practices and there was no evidence suggesting that they were involved. The trial court expressly *566 found, however, that "the witnesses painted a picture of promiscuous vote buying and other conduct on the part of certain individuals indicating intentional wrongdoing and gross negligence, all of which adversely affected the integrity of the election." Concluding that "the fraud and illegal activities ... were so conspicuously corrupt and pervasive that it has tainted the entire absentee voting procedure in this election," the trial court invalidated all of the absentee votes.
The district court of appeal reversed, stating that the trial court specifically found only 47 absentee ballots invalid, the 46 bought ballots and a ballot marked by a mother for her son in the armed forces, and therefore, there was no justification for disenfranchising the voters who cast the other 314 absentee ballots. The court concluded that "before all absentee ballots cast in a single-county election may be declared invalid, there must be a specific finding of invalidity as to a sufficient number of ballots more than enough to change the result of the election." 416 So.2d at 8. We disagree.
We reiterate our previous statement that courts must not interfere with an election process when the will of the people is unaffected by the wrongful conduct. See Boardman; Gilligan v. Special Road & Bridge District, 74 Fla. 320, 77 So. 84 (1917). However, when there is present fraud and intentional wrongdoing, which clearly affect the sanctity of the ballot and the integrity of the election process, courts must not be reluctant to invalidate those elections to ensure public credibility in the electoral process.
This Court, in Justice Adkins' majority opinion in Boardman, summarized the law to be applied in resolving election disputes. In determining whether an election should be set aside because of alleged fraudulent conduct or non-compliance with election procedures, we set forth the following factors for consideration:
(a) the presence or absence of fraud, gross negligence, or intentional wrongdoing;
(b) whether there has been substantial compliance with the essential requirements of the absentee voting law; and
(c) whether the irregularities complained of adversely affect the sanctity of the ballot and the integrity of the election.
323 So.2d at 269. Upon application of these factors to the circumstances in Boardman it was established that (a) there was no fraud or intentional wrongdoing; (b) there was substantial compliance with the statutory absentee voting requirements; and (c) the irregularities did not affect the sanctity of the ballot or the integrity of the election. We emphasized in that decision that there was no allegation or suggestion of fraud, corruption, or any type of intentional misconduct on the part of any person involved with the election. We held that a fair election is the paramount consideration. We further held that strict application of technical procedural requirements is not mandated where there has been substantial compliance with the requirements and there was no interference with the sanctity or integrity of the ballot. To have held otherwise under the circumstances presented in that case would have effectively and unnecessarily disenfranchised voters.
The district court in the instant case applied the Boardman test and concluded that, if the number of absentee ballots conclusively shown to have been bought is not sufficient to change the result of the election, then the evidence is also insufficient to support the conclusion that the fraudulent, corrupt conduct was such that it permeated the entire absentee election process. We disagree with this conclusion. Under the district court's interpretation, vote-buying fraud, except in the closest of contests, could never be established so as to invalidate an election. The burden of establishing with certainty that a specific number of ballots were tainted so as to affect the outcome of the election would be too great. Such a restrictive holding would encourage fraud *567 and corruption in the election process. Although the will of the electorate must be protected, so must the sanctity of the ballot and the integrity of the election. Courts cannot ignore fraudulent conduct which is purposefully done to foul the election or corrupt the ballot. See Wilson v. Revels, 61 So.2d 491 (Fla. 1952). In our view, fraud and corruption may permeate the entire absentee balloting process, regardless of whether the number of ballots conclusively shown to be invalid would change the outcome of the election. Once substantial fraud or corruption has been established to the extent that it permeated the election process, it is unnecessary to demonstrate with mathematical certainty that the number of fraudulently cast ballots actually affected the outcome of the election.
We also reject the district court's implication that the burden of proof, with regard to fraud or corruption, is dependent upon the status of the offender. It makes no difference whether the fraud is committed by candidates, election officials, or third parties. The evil to be avoided is the same, irrespective of the source. As long as the fraud, from whatever source, is such that the true result of the election cannot be ascertained with reasonable certainty, the ballots affected should be invalidated.
The record clearly supports the trial judge's finding that the conduct was "so conspicuously corrupt and pervasive that it ... tainted the entire absentee voting procedure in this election." Liberty County, with 4,260 residents,[2] is the smallest county in the state in terms of population. The evidence in this case established such extensive vote-buying that over thirty percent of the absentee ballots could be said to be tainted (126 out of 381). Seldom is there a more obvious case of pervasive corruption where over ten percent of the absentee voters admit that their votes were bought (46 out of 381).
Applying the Boardman test in the instant case, we find: (a) there was clear fraud and intentional wrongdoing; (b) the officials substantially complied with the voting procedures; and (c) there is no question but that the vote-buying scheme adversely affected the sanctity of the ballot and the public's perception of the integrity of this election. When substantial fraudulent vote-buying practices are clearly shown to have been involved, the election must be declared void. Failure to do so will cause the electorate to lose confidence in the electoral process, destroy the willingness of individuals to participate, and thereby allow our government to be controlled by corrupt influences. The fraud in this instance was not inconsequential. It was blatant and corrupt and it permeated a substantial part of this absentee-election process. To require evidence which would establish with mathematical certainty the specific number of invalid votes sufficient to change the result of an election would make the task of setting aside an election because of intentional fraud or corruption virtually impossible, particularly in metropolitan areas.
For the reasons expressed, we quash the decision of the district court of appeal. This cause is remanded to the district court of appeal with instructions to reinstate the judgment of the trial court.
It is so ordered.
ADKINS, McDONALD and SHAW, JJ., concur.
ALDERMAN, C.J., and BOYD and EHRLICH, JJ., dissent.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
[2] United States Bureau of the Census (1980).