590 So.2d 1381 (1991)
In re Hershel WILBOURN and the Hinds County Election Commission, Petitioners.
No. 91-M-1167.
Supreme Court of Mississippi.
November 26, 1991.
*1382 Michael S. Allred, Thomas Price Alston Jones & Davis, Natie P. Caraway, Wise Carter Child & Caraway, Jackson, Weaver E. Gore, Jackson, for petitioners.
John L. Walker, Walker Walker & Green, Sorie Tarawally, Owens Law Firm, Jackson, Tyree Irving, Greenwood, Tylvester Goss, Davis Goss & Williams, Jackson, for respondent.

ORDER
This matter came before the en banc conference on the Petition for Extraordinary Writ filed by Hershel Wilbourn and the Hinds County Election Commission pursuant to Miss.Sup.Ct.R. 21. By Order of November 20, 1991, response was called for from Respondent Peggy Hobson. This Petition requests this Court to issue a writ of mandamus or prohibition to Circuit Judge James Graves commanding him to dismiss or dissolve the TRO entered by him in this matter on November 15, 1991, and to refrain from entering any other injunctive order in this matter which would prohibit the Election Commission from certifying the winner of the Hinds County Supervisors Election and reporting the results to the Secretary of State, as required by law, so that whichever candidate is aggrieved of the Commission's results can timely file an election contest as provided by statutory procedures.
The General Election of November 5, 1991, included a race for Hinds County Supervisor, District 3. Petitioner Hershel Wilbourn and Respondent Peggy Hobson were candidates in that race. After the election, the Hinds County Election Commission met to canvass the results, including this Supervisor's election, pursuant to Miss. Code Ann. § 23-15-601 (1972). The initial vote count by the Commission indicated that Peggy Hobson received 5,358 votes and Hershel Wilbourn received 5,355 *1383 votes. On November 8, 1991, the Commission declared, but did not yet certify, Hobson the winner by 3 votes. This count reflected a resolution of dispute over certain affidavit ballots in favor of counting them.
On the morning of November 15, 1991, the 10th day after the election and, under Miss. Code Ann. § 23-15-601 and § 23-15-603, the day the Commission should have certified a winner and reported the results to the Secretary of State, the Election Commission met in executive session to reconsider whether or not to count the affidavit ballots in question. Their reconsideration resulted in their voting not to count the affidavit ballots. Apparently, this would have resulted in Hershel Wilbourn winning the election.
In the afternoon of November 15, 1991, the Commission met in open session to hear arguments of counsel for the candidates. When the Commission revealed its executive session meeting and its decision not to count the affidavit ballots in question, Peggy Hobson objected to the Commission's actions taken in closed session. Therefore, the Commission, in open session, reconsidered the affidavit ballots again, and voted once again not to count them.
The Commission then stated that while it wanted to recanvass and recount the votes based on this decision not to count the affidavit ballots, it could not do so because of an order entered by Chancellor Chet Dillard on November 7, 1991, in response to a motion filed by Wilbourn, impounding the ballots, affidavits and other documents relating to the election pending Wilbourn's election contest. Wilbourn's attorney declared that he would file a motion to lift this order so that the Commission could recanvass and recount, which he did, and an order lifting the November 7 order was entered at 4:06 p.m. Friday, November 15. The Commission, however, adjourned at 2:00 p.m. without certifying a winner and without reporting results to the Secretary of State.
At 4:50 p.m. November 15, Hobson filed a complaint in Hinds County Circuit Court, Peggy Hobson v. Sue Sautermeister, Ruth Shirley, Homer Edgeworth, Robert Lilley, Betty Hunt and Herschel Wilburn [sic], No. 91-69-334, and a Motion for TRO and Preliminary Injunction to enjoin the Election Commission from certifying anyone other than Peggy Hobson as the winner of the Supervisor District 3 race. Hearing was held on the Motion for TRO on Friday, November 15, 1991, at 5:00 p.m. Request for the hearing to be transcribed was overruled because there was no court reporter available. Their motion that Judge Graves recuse was overruled, and Judge Graves declined to rule at that time on their motion for the other 3 Hinds Circuit Judges to recuse.
At the conclusion of that hearing, Judge Graves entered a TRO enjoining the Election Commission from taking any further action in the Hinds County District 3 Supervisor's race pending hearing on the motion for preliminary injunction within 10 days. Hobson was required to post a $100 bond.
On Monday, November 18, 1991, Hobson filed an Amended Complaint seeking, by way of Declaratory Judgment pursuant to MRCP 57, to compel the Election Commission to count the problematic affidavit votes and certify her as the winner and so report to the Secretary of State. In the alternative, the Amended Complaint seeks to have the circuit court declare that the problematic ballots should be counted, that the decision of the Election Commission not to count them is a change in voting procedures which has not been pre-cleared under the Voting Rights Act, and that the actions taken by the Election Commission in closed session resulting in a decision not to count the ballots was a violation of the Open Meetings Act. The Amended Complaint does not name Wilbourn as a defendant. On Tuesday, November 19, 1991, Wilbourn filed a Motion to Vacate and Set Aside the TRO, the Commission filed a separate Motion to Dissolve the TRO, Judge Graves set a hearing date on "all motions pending" for Friday, November 22, 1991, at 2:00 p.m.
On Wednesday, November 20, 1991, Wilbourn and the Commission filed this Petition in this Court. A five-member panel *1384 of this Court issued an order calling for a response to the petition and staying proceedings in the trial court pending consideration of this petition by the en banc conference.
The effect of the TRO was to prohibit the Hinds County Election Commission from certifying the winner under Miss. Code Ann. § 23-15-601:
and the commissioners of election shall canvass the returns, ascertain and declare the result, and, within ten (10) days after the day of the election, shall deliver a certificate of his election to the person having the greatest number of votes for ... board of supervisors... .
The 10th day after the election was November 15, 1991, and the Commission appeared ready to recanvass and possibly certify a winner after the open session consideration of the questionable affidavit ballots and vote by the Commission not to count them. However, because of the earlier order issued by Chancellor Dillard, and later because of the TRO, the Election Commission has not timely certified a winner.
Further, the Commission has not reported and delivered the returns to the Secretary of State as provided by Miss. Code Ann. § 23-15-603:
The commissioners of election shall, within ten (10) days after the general election, transmit to the Secretary of State, to be filed in his office, statement of the whole number of votes given in their county for each candidate for any office at the election... .
Again, the 10th day fell on November 15, 1991. With issuance of the TRO on the evening of November 15, the Commission had no more opportunity to try to comply with this statute.
Another potential problem with the TRO is that the provisions for a candidate challenging the manner or results of the election require that such election contest be filed within 20 days after the election, pursuant to Miss. Code Ann. § 23-15-951. The 20th day falls on November 25, 1991. Because no winner has been certified and reported to the Secretary of State in this election, the candidates do not know which one of them should file a contest such that this deadline can be met.
Early on, this Court stated this doctrine: "It is not the policy of this state to have elections and other political matters of government reserved to legislative discretion to be interfered with by the judges and officers of the judicial department of the government ... but the inclination of judicial thought in this state is that elections of all sorts are not to be interfered with by the courts." Gibbs v. McIntosh, 78 Miss. 648, 649, 29 So. 465, 465-66 (1901). Gibbs arose when a chancery court issued a supersedeas pending appeal stopping a local option election.
This Court has adhered to this doctrine in the context of primary elections where parties have sought from chancery courts an injunction or mandamus to compel the Democratic or Republican Executive Committee or an election commission to place their name on the ballot as that party's nominee. In Goodman v. Rhodes, 375 So.2d 991, 993 (Miss. 1979), this Court stated:
Rhodes' remedy was not by injunction in the chancery court but by the procedure outlined in Hinds County Democratic Executive Committee v. Muirhead, 259 So.2d 692 (Miss. 1972). In that case the Hinds County Democratic Executive Committee refused to place Mrs. Muirhead's name on the ticket as a candidate in the Democratic primary election. Mrs. Muirhead obtained a writ of mandamus directing the Hinds County Election Commission to certify her as a candidate. We reversed and rendered, holding that Mrs. Muirhead was afforded due process of law, "... by the right to a hearing before the committee [...] and the right to appeal fortified by advancement on the appellate docket due to public interest."
This case followed a long line of cases from this court expressing the doctrine of judicial non-interference by way of injunction or mandamus in the election scheme except for statutorily provided judicial review after nominees or candidates or winners were determined by the appropriate statutorily *1385 designated entity. See Barnes v. McLeod, 165 Miss. 437, 140 So. 740 (1932); Howard v. Sheldon, 151 Miss. 284, 117 So. 839 (1928); Ramey v. Woodward, 90 Miss. 777, 44 So. 769 (1907); State ex rel. Brewer v. Abbay, 82 Miss. 559, 35 So. 153 (1903). In Barnes v. Ladner, 241 Miss. 606, 131 So.2d 458 (1961), this court again declared that a court by writ of prohibition could not prohibit the Secretary of State from receiving and tabulating election returns and issuing a proclamation certifying the results of an election on a proposed constitutional amendment as he was constitutionally mandated to do.
Even during the 19th century, in Ex parte Wimberly, 57 Miss. 437 (1879), this Court reasoned that the judicial branch should not interfere with the election contest scheme for determining challenges to elections: "If the ultimate object of the injunction be to withdraw from the special tribunal created by the statute the determination of the contest, and to give to the Chancery Court the settlement of the question as to who has been elected, it is plainly beyond the jurisdiction of the court." Id. at 447.
More closely related is the case of Native Lumber Co. v. Board of Supervisors, 89 Miss. 171, 42 So. 665 (1907). In that case, an injunction was sought to restrain the Board of Supervisors from entering an order declaring the results of an election as to the division of the county. This Court wrote:
It is perfectly obvious from the latter part of this prayer that the real purpose of this bill was to have the chancery court convert itself into a canvassing board for the purpose of canvassing the vote, declaring the result, and decreeing that the election had not been carried. For reasons too obvious to state, it is manifest that the chancery court had no jurisdiction to entertain such a bill. The counting of the votes, the canvassing of the returns, and a declaration of the result were by the political department of the government  the Legislature  expressly committed to the election commission and the board of supervisors... .
Id. 42 So. at 665.
The Court explained further this doctrine of non-judicial interference in the election scheme in Muirhead: "It [a court] can direct an official or commission to perform its official duty or to perform a ministerial act, but it cannot project itself into the discretionary function of the official or the commission. Stated differently, it can direct action to be taken, but it cannot direct the outcome of the mandated function." Muirhead, 259 So.2d at 695. Thus, a court could, if necessary, compel by mandamus an election commission or executive committee to perform its statutory duty upon its failure to do so, or prohibit it by way of injunction or writ of prohibition from exceeding its statutory authority in some respect; use of an extraordinary writ, however, cannot be extended to actually telling the commission what action to take.
In this vein, the case of Lopez v. Holleman, 219 Miss. 822, 69 So.2d 903 (1954), rev'd on other grounds, 350 So.2d 998, 1010 (Miss. 1977), n. 6, cert. denied 435 U.S. 934, 98 S.Ct. 1510, 55 L.Ed.2d 532 (1978), involved a circuit court issuing a writ of mandamus to the circuit clerk directing the clerk to allow candidate Lopez to examine the ballot boxes as provided by law [currently Miss. Code Ann. § 23-15-911]. This Court found that the circuit court had power to issue a writ of mandamus to the circuit clerk to permit inspection of the ballot boxes because the mandamus was in furtherance and support of the election contest proceedings. Id. 219 Miss. at 835, 69 So.2d at 907.
Here, the extraordinary measure of the TRO was not used to compel the Election Commission to perform its duty or to stop it from acting outside its authority or in furtherance of an election contest; instead, it was used to stop the Commission from performing its statutorily mandated duties. On the basis of this non-interference doctrine, the TRO should not have been entered to stop the Election Commission from performing its statutory duties. The Order entered on November 7, 1991, *1386 by Chancellor Dillard, although lifted by Order of November 15, 1991, was likewise inappropriate in that it, too, had the effect of prohibiting, on the afternoon of November 15, 1991, the Election Commission from recanvassing the ballots and perhaps timely certifying a winner.
Further, with the exception of those instances as described in Muirhead and Lopez, the statutory provision is the exclusive remedy for deciding election contest issues, of which the legality of votes cast is one, see, e.g. Livingston v. Bounds, 212 Miss. 184, 54 So.2d 276 (1951), and it would be inappropriate to decide by declaratory judgment how to legally count these affidavit ballots because that issue does not become ripe for judicial resolution until a statutory election contest is commenced following the election commission's certification.
"The jurisdiction of the courts is not expanded and requests for declaratory judgments may be heard only in cases that otherwise are within their jurisdiction." Comment, MRCP 57. The initial determination whether to accept or reject ballots in an election is statutorily lodged with the election commission. Except for remedial writs in aid of future jurisdiction (e.g. Lopez, supra), the judiciary is compelled to stay its hand until an election contest is filed in accordance with the statute. At that point such of our rules as may supplement the statutory process are applicable. MRCP 81. All of the issues raised in these proceedings are capable of determination within the context of an election contest wherein a jury will determine the factual issue of which candidate received the greatest number of legal votes upon proper instructions of the court as to the law.
Therefore, this Court finds that the circuit court had no jurisdiction to entertain the complaint for declaratory judgment, motion for preliminary injunction, or motion for temporary restraining order, and hereby issues a writ of mandamus directing Hinds County Circuit Judge Graves to dissolve the temporary restraining order and dismiss all proceedings in his court pertaining to this matter for lack of jurisdiction without prejudice to either candidate to file an election contest pursuant to § 23-15-951 and without prejudice to the candidate so filing to raise these issues in the election contest proceedings.
Because of the judicial intervention of the circuit court, the Hinds County Election Commission's statutory deadlines have passed for completing its duties, and the statutory deadline for filing an election contest has passed. Therefore, the Hinds County Election Commission is hereby directed to certify a winner and report the results to the Secretary of State, as required by law, no later than December 2, 1991. Thereafter, the unsuccessful candidate has 10 days from and after December 2, 1991, to file an election contest.
SO ORDERED.
All Justices concur except for ROBERTSON, J., absent and not participating.