# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-EC-01247-SCT

*CHRIS McDANIEL*

*v.*

*THAD COCHRAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/2014 |
| TRIAL JUDGE: | HON. HOLLIS McGEHEE |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MITCHELL HARRY TYNER, SR. |
| | STEVE C. THORNTON |
| ATTORNEYS FOR APPELLEE: | PHIL B. ABERNETHY |
| | MARK W. GARRIGA |
| | LEANN W. NEALEY |
| | LEM MONTGOMERY |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 10/24/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     On June 24, 2014, Thad Cochran, a Republican nominee for United States Senator, won the Republican primary runoff. Chris McDaniel, his opponent, filed an election contest with the State Republican Executive Committee (SREC) on August 4, 2014 – forty-one days after the election. The SREC declined to consider McDaniel's complaint, and McDaniel sought judicial review. Relying on ***Kellum v. Johnson***, 237 Miss. 580, 115 So. 2d 147 (1959), the trial judge found that McDaniel did not meet the twenty-day deadline to file his election contest and dismissed the case. On appeal, McDaniel argues that no deadline exists

to contest a primary election. Under the doctrine of *stare decisis*, we find that **Kellum** applies, McDaniel failed to file his election contest within twenty days, and the dismissal is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2.    On Tuesday, June 3, 2014, the Mississippi Republican Party held its primary election for the office of United States Senator. McDaniel received the highest number of votes and Cochran finished second. Because neither received a majority of the votes cast, a runoff was held three weeks later on Tuesday, June 24, 2014.

¶3.    The returns were canvassed, the results declared, and Cochran was announced as the winner and Republican nominee for United States Senator. On July 7, 2014, the SREC certified the election results to the Mississippi Secretary of State. The SREC also amended its certification on July 10, 2014.

¶4.    McDaniel sought to examine the ballot boxes for multiple counties and, on July 3, 2014, gave the required three-days' notice. Over twenty-eight days, McDaniel examined election records across the State. McDaniel alleged that several circuit court clerks precluded him from viewing original election records, impeding his examination.

¶5.    Pursuant to Mississippi Code Section 23-15-923, McDaniel filed his election-contest complaint with the SREC on August 4, 2014, forty-one days after the primary runoff election. McDaniel alleged that the integrity of the June 24 primary was comprised because "Democrat voters were allowed to cast illegal and fraudulent ballots" and a large number of "[i]llegal votes by absentee ballot were likewise included in the final count[.]" Thereafter, McDaniel supplemented his complaint twice – on August 6, 2014, and on August 12, 2014

2

– to add election code violations. On August 6, 2014, the SREC informed McDaniel that, due to time constraints, it would not review his petition and encouraged him to seek judicial review. The SREC's letter also mentioned that *Kellum* "appear[ed] to impose a [twenty-]day time limit from the runoff to file a challenge[.]"

¶6.    McDaniel petitioned for judicial review on August 14, 2014. This Court appointed the Honorable Hollis McGehee to hear McDaniel's election contest. On August 21, 2014, Cochran moved to dismiss the petition based on *Kellum,* which held that a challenge to a district or statewide election must be initiated within twenty days of the election. McDaniel countered that the plain language of the statute did not provide a date by which an election contest must be filed. McDaniel also argued that *Kellum* was based on election laws since repealed by the Legislature and, hence, did not apply.

¶7.    The trial court heard arguments on Cochran's motion to dismiss on August 28, 2014, and rendered a bench opinion on August 29, 2014.  Thereafter, the trial court entered its final judgment on September 4, 2014.  While Section 23-15-923 did not state when the complaint must be filed, the trial court determined that an analogous statute regarding a single county election – Mississippi Code Section 23-15-921 – established a twenty-day deadline. The trial court noted that *Kellum* analyzed predecessor statutes and, using principles of statutory construction, determined that the deadline also applied to a contest of a multicounty or statewide office. The trial court concluded that the substance of the predecessor statutes was essentially the same as current law and, thus, *Kellum* was applicable to the present case. Because McDaniel did not file his complaint within twenty days of the primary, the trial court dismissed the petition for judicial review with prejudice. McDaniel timely filed his

3

notice of appeal on September 5, 2014. This Court expedited the appeal.

## DISCUSSION

¶8.     "In an election contest, the standard of review for questions of law is de novo."

***Garner v. State Democratic Exec. Comm***., 956 So. 2d 906, 909 (Miss. 2007) (citing ***Ladner***

***v. Necaise***, 771 So. 2d 353, 355 (Miss. 2000)).

¶9.     McDaniel's argument has three main points: (1) The express language of Section 23-

15-923 is clear and unambiguous; the Legislature intended to remain silent regarding when

a primary election contest must be filed. (2) ***Kellum***, which found that a twenty-day deadline

to contest the primary for a single county office also applied to a primary contest of a multi-

county or statewide office, was decided wrongly and no longer has precedential value. (3)

***Barbour v. Gunn***, 890 So. 2d 843 (Miss. 2004), which involved an election petition filed

thirty-four days after the primary election, overruled ***Kellum***.

### I. Section 23-15-923 and Its Predecessors

¶10.    McDaniel filed his complaint under Section 23-15-923, which concerns primary

election contests for multi-county and statewide office:

> [A] person desiring to contest the election of another returned as the nominee in state, congressional and judicial districts, and in legislative districts composed of more than one (1) county or parts of more than one (1) county, upon complaint filed with the Chairman of the State Executive Committee, by petition, reciting the grounds upon which the election is contested. If necessary and with the advice of four (4) members of said committee, the chairman shall issue his fiat to the chairman of the appropriate county executive committee, and in like manner as in the county office, the county committee shall investigate the complaint and return their findings to the chairman of the state committee. The State Executive Committee by majority vote of members present shall declare the true results of such primary.

Miss. Code Ann. § 23-15-923 (Rev. 2007). The statute does not mention when the complaint

4

should be filed. In contrast, Section 23-15-921, which concerns a primary election contest involving a single-county, provides a twenty-day deadline:

> [A] person desiring to contest the election of another person returned as the nominee of the party to any county or county district office, or as the nominee of a legislative district composed of one (1) county or less, *may, within twenty (20) days after the primary election, file a petition with the secretary, or any member of the county executive committee in the county in which the election was held*, setting forth the grounds upon which the primary election is contested; and it shall be the duty of the executive committee to assemble by call of the chairman or three (3) members of said committee, notice of which contest shall be served five (5) days before said meeting, and after notifying all parties concerned proceed to investigate the grounds upon which the election is contested and, by majority vote of members present, declare the true results of such primary.

Miss. Code Ann. § 23-15-921 (Rev. 2007) (emphasis added).

¶11.    McDaniel asserts that Section 23-15-923 is clear and unambiguous, and the Court should apply the plain meaning of the statute.  McDaniel cites *City of Natchez v. Sullivan*, 612 So. 2d 1087 (Miss. 1992), as support: "[T]he omission of language from a similar provision on a similar subject indicates that the legislature had a different intent in enacting the provisions, which it manifested by the omission of the language." *City of Natchez*, 612 So. 2d at 1089. According to McDaniel, a primary election contest for a statewide office is more complicated than one for a single-county office and, thus, would require more time (an unpredictable amount of time) to resolve. For that reason, McDaniel claims it is conceivable that the Legislature purposefully declined to set forth a fixed deadline to contest a statewide primary election.

¶12.    As comparison, McDaniel states that Mississippi Code Section 23-15-927 did not impose a deadline within which to file a petition for judicial review, only stating that it

5

should be filed "forthwith." Miss. Code Ann. § 23-15-927. In a previous case, the Court addressed the statute and found that it did not impose a fixed time limit and that "forthwith" was to be determined on a case-by-case basis. *Pearson v. Parsons*, 541 So. 2d 447 (Miss. 1989). Cochran points out, and the Court acknowledges, that Section 23-15-927 was amended in 2012 and now gives challengers ten days to file a petition for judicial review. *See* Miss. Code Ann. 23-15-927 (Supp. 2014).

¶13.     The Court notes that Section 23-15-923 does not even include language, like "forthwith," to suggest that the election contest should be filed within a reasonable time. If a statute is plain and unambiguous, the Court will employ its plain meaning. *Mississippi Methodist Hosp. and Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 607 (Miss. 2009). The Court may, however, engage in statutory interpretation where a statute is ambiguous or *silent* on an issue. *Id*. The Court's goal is to determine the legislative intent. *Id*. "The best evidence of legislative intent is the text of the statute; the Court may also look to the statute's historical background, purpose, and objectives." *Id*. (quoting *In re Duckett*, 991 So. 2d 1165, 1181-82 (Miss. 2008)). A historical review of Sections 23-15-921 and 23-15-923 is helpful to this analysis.

¶14.     The substance of Sections 23-15-921 and 23-15-923 originated in 1908. Prior to that time, no procedure existed to contest a primary election. *See Kellum*, 115 So. 2d at 149. The original act was codified in one section and had three parts. 1908 Miss. Laws ch. 136. Section one concerned "district, county, or beat office" and, in pertinent part, stated that the challenger had to file a contest "within twenty days after the primary election." *Id*. It also detailed how the county executive committee should investigate the allegations and decide

the result of the election. *Id.* Section two provided that, in a primary for an office covering multiple counties, the state executive committee must call upon the county committees to investigate the claim, "in like manner as in county office[.]" *Id.* Section three – the enforcement arm of the act – authorized a committee (county or state) to subpoena witnesses. *Id.*

¶15. In the Mississippi Code of 1942, the single 1908 Act was separated into three Sections – Sections 3143, 3144, and 3145. ***Kellum***, 115 So. 2d at 149. Sections 3143 and 3144 are pertinent to this discussion. Section One of the 1908 Act became Section 3143 and provided that:

> A person desiring to contest the election of another person returned as the nominee of the party to any county or beat office, may, within twenty days after the primary election, file a petition with the secretary, or any member of the county executive committee in the county in which fraud is alleged to have been perpetrated, setting forth the grounds upon which the primary election is contested; and it shall be the duty of the executive committee to assemble by call of the chairman or three members of said committee, notice of which contest shall be served five days before said meeting, and after notifying all parties concerned, proceed to investigate the allegations of fraud, and, by majority vote of members present, declare the true results of such primary.

Miss. Code § 3143 (1942). Section Two of the 1908 Act became Section 3144 and provided that:

> In state, congressional and judicial districts, upon complaint filed with the chairman of the state executive committee, by petition, reciting the allegations of fraud, and with the advice of four members of said committee, the chairman shall issue his fiat to the chairman of the county executive committee, where fraud is alleged to have been committed, and in like manner as in county office, the county committee shall investigate the complaint and return their findings to the chairman of the state committee, which shall declare the candidate nominated, whom the corrected returns show is entitled to the same. And the same procedure shall apply to senatorial and flotorial contests in and by their respective executive committees.

7

Miss. Code § 3144 (1942).

¶16.    The Legislature attempted to consolidate election law into one, coherent code and "remedy the deficiencies resulting from the State's earlier practices." Andrew Taggart and John C. Henegan, *The Mississippi Election Code of 1986: An Overview*, 56 Miss. L. J. 535, 536-37 (1986).  Its three previous attempts were unsuccessful and blocked by federal court under Section 5 of the Voting Rights Act. Thereafter, the Legislature assembled a twenty-five-member task force to draft the election laws "into a single, comprehensive bill." *Id*. at 537-41. The end result was the Mississippi Election Code of 1986. *Id*. at 536. The Mississippi Code specifically states that Section 23-15-921 is derived from Section 3143 and that Section 23-15-923 is "[d]erived from 1942 Code § 3144[.]" Miss. Code Ann. §§ 23-15-92; 23-15-923 (Rev. 2007).

¶17.    So Mississippi's primary election statutes originated in a single Act and are now split into separate sections. The statute-numbering sentence employed in the Mississippi Code, however, was created by the publisher. The preface states that the Mississippi Code "brings together provisions of general statutory law having a common subject matter into a more orderly and logical framework of code titles and chapters, and employing a modern and effective Section numbering system." Miss. Code of 1972, Titles 21 to 23, *Preface*, at iii (Rev. 2007). In the user's guide, the publisher explains its organization and numbering system. Miss. Code of 1972, Titles 21 to 23, *User's Guide,* at xi (Rev. 2007).

## II. *Kellum v. Johnson*

¶18.    One case details the relationship between the 1908 Act and Sections 3143 and 3144 – *Kellum v. Johnson*. The Court addressed Section 3144's silence regarding when to file

a primary election contest for an office covering multiple counties. The Court considered the historical background, purpose and objectives of the relevant statutes.

¶19.    In *Kellum*, the losing candidate for the office of District Attorney of the Seventeenth Circuit Court District challenged the election results in the Democratic primary. *Kellum*, 115 So. 2d at 148. The election took place on August 4, 1959, and Kellum filed his complaint on September 8, 1959 – thirty-five days after the election. *Id*. The Democratic Executive Committee decided to take no action on the complaint. *Id*. Thereafter, Kellum sought judicial review. *Id*. Johnson, the declared winner, moved to dismiss Kellum's petition as untimely because it was not filed within twenty days of the primary election. *Id*. The trial court agreed, dismissing the petition. *Id*. Kellum appealed to this Court.

¶20.    The Court considered the history of the State's primary election contest-laws, starting with the 1908 Act. *Id*. at 149. The Court stated that the 1908 Act, "with slight and unimportant amendments, now appears as Sections 3143-45, Code of 1942 . . . ." *Id*. Because Sections 3143 and 3144 were parts of the same Act and regarded the same subject matter, the Court determined that the Sections must be considered as a whole:

> An intent to discriminate unjustly between different cases of the same kind is not to be ascribed to the Legislature. Statutes should, if possible, be given a construction which will produce reasonable results, and not uncertainty and confusion.
>
> . . .
>
> The different parts of a statute reflect light upon each other, and statutory provisions are regarded as in pari materia where they are parts of the same act. Hence, a statute should be construed in its entirety, and as a whole. The general intention is the key to the whole act, and the intention of the whole controls the interpretation of its parts. The fact that a statute is subdivided into Sections or other parts should not obstruct or obscure the interpretation of the

9

law as a whole. All parts of the act should be considered, compared, and construed together. It is not permissible to rest the construction upon any one part alone, or upon isolated words, phrases, clauses, or sentences, or to give undue effect thereto.

*Id*. at 149-50.

¶21.    The Court noted that Section 3144 did not mention when the complaint should be filed. The Court recognized, however, that a primary election contest "must be conducted speedily" in light of the looming general election. *Id*. at 150. Using canons of statutory construction, the Court considered the statutes as a whole and determined that the twenty-day deadline to file a contest for a single county office (Section 3143) also applied to an office covering multiple counties (Section 3144). The Court also considered a statute pertaining to a general or special election contest which required that a complaint be filed within twenty days and found it to be persuasive authority. Miss. Code § 3287 (1942).

¶22.    The Court reasoned that:

> It is inconceivable that the Legislature intended to limit the time in which contests could be filed where, a county or beat office was involved, and yet fix no time limit whatever for that purpose in regard to all other offices. So to hold would convict the Legislature of unaccountable capriciousness and result in endless uncertainty and confusion. The two Sections are in *pari materia*, and all contests therefore must be begun within twenty days after the primary. To hold otherwise would be senseless.

*Id*. Finding that the twenty-day deadline was "a condition precedent to the right to file a contest" under Section 3144, the Court found that Kellum had failed to meet the deadline and, in a unanimous opinion, dismissed the case. *Id*. at 151.

¶23.    McDaniel states that, since *Kellum*, the Legislature repealed Sections 3143 and 3144 and made material changes to the statutes. Thus, McDaniel argues that *Kellum* no longer has

10

precedential value. McDaniel also notes that the Legislature added or modified time requirements in forty-seven sections of the election code. According to McDaniel, the Legislature had the opportunity, if it desired, to add a time requirement to Section 23-15-923 to contest a primary election; it did not. Cochran counters that the substance of Sections 3143 and 3144 was carried forward in current election law and, thus, *Kellum* applies.

¶24.    "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Caves v. Yarbrough*, 991 So. 2d 142, 153 (Miss. 2008) (quoting *Lorillard, Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 580-81, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978)). The Legislature reenacted Section 3144 in Section 23-15-923 without material change. Review a side-by-side comparison of the former and current statute:

**§ 3144 Chairman of state executive committee to issue his fiat to county chairman reciting charges.**

In state, congressional and judicial districts, upon complaint filed with the chairman of the state executive committee, by petition, reciting the allegations of fraud, and with the advice of four members of said committee, the chairman shall issue his fiat to the chairman of the county executive committee, where fraud is alleged to have been committed, and in like manner as in county office, the county committee shall investigate the complaint and return their findings to the chairman of the state committee, which shall declare the candidate nominated, whom the corrected returns show is entitled to the same. And the same procedure shall apply to senatorial and flotorial contests in and by their respective executive committees.

**§ 23-15-923. Nominations with respect to State, congressional, and judicial districts, etc., investigation findings, and declaration of nominee.**

Except as otherwise provided in Section 23-15-961, a person desiring to contest the election of another returned as the nominee in state, congressional and judicial districts, and in legislative districts composed of more than one (1) county or parts of more than one (1) county, upon complaint filed with the Chairman of the State Executive Committee, by petition, reciting the grounds upon which the election is contested. If necessary and with the advice of four (4) members of said committee, the chairman shall issue his fiat to the chairman of the appropriate county executive committee, and in like manner as in the county office, the county committee shall investigate the complaint and return their findings to the chairman of the state committee. The State Executive Committee by majority vote of members present shall declare the true results of such primary.

¶25. One material change exists. The Legislature expanded the grounds to contest a primary election. Under Section 3144, a person could challenge an election only for fraud. Now, Section 23-15-923 does not limit the grounds for a challenge. No other changes were made to the substance of the law. For instance, Section 23-15-923 clarifies who can file an election contest. It eliminates antiquated language such as "senatorial and flotorial contests" and clarifies that election challenges shall be filed with the State Executive Committee. The changes are not material. Thus, *Kellum* still has precedential value.

¶26. The Court previously has found that a judicial interpretation of a statute was adopted

when the Legislature reenacted the statute without change. Take, for example, *McDaniel v. Beane*, 515 So. 2d 949 (Miss. 1987). J.C. McDaniel, not to be confused with the Appellant, failed to have his petition for judicial review signed by two, disinterested lawyers pursuant to Section 23-15-927. *Id.* at 950-952. On appeal, he argued that the statute did not require that the petition be signed by disinterested lawyers. The Court, however, found that the "disinterested" language was contained in another statute and, by previous caselaw, was judicially interpreted into Section 23-15-927. *Id.* at 951-952; *see Pittman v. Forbes*, 186 Miss. 783, 191 So. 490 (1939); *Pearson v. Jordan*, 186 Miss. 789, 192 So. 39 (1939). Because the statutes were re-enacted into current law without substantial change, the Court found that the prior judicial interpretation was engrafted into the statute. *Id.*

¶27.   Viewed side-by-side, former Section 3144 and current Section 23-15-923 are not materially different. Thus, it cannot be said that the Legislature intended to repeal the statute and thereby lessen *Kellum*'s precedential value. The Legislature is assumed to be aware of judicial interpretations of its statutes, and the Legislature has failed to amend Section 23-15-923 to reflect a decision contrary to *Kellum*. "[W]e must conclude that the legislative silence amounts to acquiescence." *Caves*,  991 So. 2d at 154. The Court's interpretation of the statutes in *Kellum* was approved by the Legislature, and, absent legislative action, has become a part of the statute. *See Crosby  v. Alton Oschner Med. Found.*, 276 So. 2d 661, 670 (Miss 1973).

¶28.   Even if we disagreed with *Kellum*'s holding, the principle of *stare decisis* is strong. "[A] former decision of this court should not be departed from, unless the rule therein announced is not only manifestly wrong, but mischievous." *Caves*, 991 So. 2d at 151. Of

13

course, McDaniel alleges that *Kellum* is mischievous, as its application would result in an illogical outcome – the challenger would be required to file the contest before the examination of election records is complete. But, as Cochran points out, it is possible for a challenger to file an election contest, which covers multiple counties, within twenty days. *See, e.g. Pyron v. Joiner*, 381 So. 2d 627 (Miss. 1980) (within twenty days of primary, candidate filed complaint to contest election for office that covered thirty counties). Also, the initial complaint, like any other complaint, must specify only a claim under the statute. *See* Miss. Code Ann. § 23-15-923 (Rev. 2007) (stating that the complaint must "recit[e] the grounds upon which the election is contested"). The challenger may amend his or her petition to include additional evidence. *See, e.g., Noxubee County v. Russell*, 443 So. 2d 1191 (Miss. 1983). In fact, McDaniel amended his complaint twice after filing with the SREC. We are not persuaded by his argument.

¶29.    Briefly, we address the argument presented by *amicus curiae*, Conservative Action Fund. Conservative Action Fund contends that the Court should afford strict deference to the plain language of Section 23-15-923. It states that anything more would violate the Elections Clause of the United States Constitution, which grants the Legislature exclusive authority to regulate federal elections. *See* U.S. Const. art. I, §4, cl. 1.  The Court's decision in no way violates the Elections Clause. It is our job to resolve ambiguities in the law. This is fundamental. We are not creating a deadline. As determined by *Kellum*'s sound interpretation of our election contest laws, the deadline already exists; it was put in place by the Legislature in 1908, and it was carried forward into the present statute.

    **III. *Barbour v. Gunn***

14

¶30.   McDaniel argues that the Court's decision in *Barbour v. Gunn*,  890 So. 2d 843 (Miss. 2004), overruled *Kellum*. Cochran counters that *Barbour* did not address the time to file an election contest and thus is inapplicable.

¶31.   In *Barbour*, Jep Barbour and Phillip Gunn sought the Republican nomination for District 56 of the Mississippi House of Representatives. *Id*. at 844. The primary election was held on August 5, 2003. *Id*. Barbour was declared the winner. *Id*. Under Section 23-15-923, Gunn filed an election contest on September 8, 2003 – thirty-four days after the primary. *Id*. The SREC retained jurisdiction and set a hearing date for October. *Id*. at 845. Gunn, however, chose to file a petition for judicial review. *Id*. The judge ruled in favor of Gunn and ordered a new election in two precincts. *Id*. Barbour appealed. *Id*.

¶32.   The Court addressed whether the circuit court had jurisdiction to consider Gunn's petition when he did not allow the SREC a reasonable opportunity to act upon the petition. *Id*. at 846. The question as to whether Gunn timely filed his petition was not addressed. Ultimately, the Court determined that, because the SREC expressed doubt as to whether it could decide the issue before the general election, Section 23-15-927 allowed Gunn to seek judicial review. *Id*. at 847.

¶33.   McDaniel states that, prior to a review on the merits, the Court is required to determine whether it has jurisdiction of a case. McDaniel argues that, as a result, the *Barbour* Court considered whether Gunn filed his petition timely and, by exercising jurisdiction, the Court determined that the petition was timely. *Id*. at 39-41. McDaniel cites *Drummond v. State*, 184 Miss. 738, 185 So. 207 (1938), in support:

It has been argued that inasmuch as the high court did not mention the subject

15

of its jurisdiction, or the question of the direct appeal, it may be considered that it did not pass upon that question. The authorities above cited are distinctly contrary to any such argument, for the court was bound to pass upon the question, as already shown. Therefore, instead of assuming that it did not pass upon the question -- which assumption would be that it was oblivious of its duties in the premises -- we must rather assume that it considered the question so plain, that the validity of the statute in that respect was so obvious, that it required no discussion of the point. . . it is the duty of an appellate court to inquire of its own motion, even though the question is not raised by the parties, whether the appellate court has jurisdiction.

*Id*. at 209-210. Hence, McDaniel believes that the Court's exercise of jurisdiction in *Barbour* overruled *Kellum*.

¶34.    Cochran counters that the parties in *Barbour* did not raise whether the candidate timely filed his election contest and, thus, *Barbour*'s silence on the issue did not overrule *Kellum*. In *Foster v. Harden*, 536 So. 2d 905 (Miss. 1988), the Court affirmed a trial court's finding that it lacked jurisdiction to hear an election contest regarding a candidate's residency despite the fact that the Court had decided the issue differently in a previous case. The Court noted that, in the earlier decision, the parties did not raise and the Court did not address jurisdiction. *Id*. (citing *Gadd v. Thompson*, 517 So. 2d 576 (Miss. 1987)). Cochran argues that, like the *Foster* court, the Court should not treat *Barbour*'s silence as overruling *Kellum*, stating that "[t]his Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio." *U.S. v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38, 73 S. Ct. 67, 97 L. Ed. 54 (1952).

¶35.    *Barbour* addressed a different jurisdictional argument. The parties did not raise whether Gunn's petition was filed timely, and we will not imply that the Court reached the question. We find that, because *Barbour* did not address the time to file, *Barbour* did not

16

overrule *Kellum*'s explicit holding.

## CONCLUSION

¶36.   In 1959, the Court, in *Kellum*, through canons of statutory construction, determined that a candidate has twenty days following the primary to file an election contest for an office covering multiple counties.  The statutes considered in 1959 have been reenacted without material change. Thus, under the doctrine of *stare decisis*, we find that McDaniel failed to file his election contest timely, and the trial judge did not err by dismissing the case.

¶37.   **AFFIRMED**.

**WALLER, C.J., AND KITCHENS, J., CONCUR. RANDOLPH, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J. DICKINSON, P.J., CHANDLER AND PIERCE, JJ., NOT PARTICIPATING.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶38.   I agree that the dismissal of this case should be affirmed, however, upon grounds unrelated to a failure to timely file. If the petition was subject to judicial review, I would side with Justice Coleman's analysis, for Mississippi Code Section 23-15-923 is substantially different from its predecessor statute, which was repealed, not revised or reenacted. Indeed, the entire election code was overhauled in a comprehensive manner. Thus, I would conclude that the trial judge erred in relying upon *Kellum*'s interpretation of a prior statute as the basis for dismissal. However, the primary issue that must be decided is for the Legislature, not the courts of this state.

¶39.   An examination of the pleadings reveals that the issues raised and relief sought were substantially broader than those in a normal, stand-alone election contest. The petitioner

additionally sought injunctive relief against the Mississippi State Republican Executive Committee (SREC), County Republican Executive Committees (CREC), and state circuit clerks, all nonparties to the proceeding. The record offers no evidence that SREC, CREC, or any of the state circuit clerks were served or on notice to defend the petition. An injunction could not have been granted in their absence. Beyond that shortcoming, the relief sought by: (1) the suspension and holding in abeyance the certification of Cochran by the SREC; and (2) the suspension and holding in abeyance the placement of Cochran's name on the general election ballot, presents a glaring problem. It is obvious that granting an injunction as to (1) or (2) would run afoul of our caselaw. This Court has determined that:

> "It [a court] can direct an official or commission to perform its official duty or to perform a ministerial act, but it cannot project itself into the discretionary function of the official or the commission. Stated differently, it can direct action to be taken, but it cannot direct the outcome of the mandated function." Thus, a court could, if necessary, compel by mandamus an election commission or executive committee to perform its statutory duty upon its failure to do so, or prohibit it by way of injunction or writ of prohibition from exceeding its statutory authority in some respect; use of an extraordinary writ, however, cannot be extended to actually telling the commission what action to take.

*In re Wilbourn*, 590 So. 2d 1381, 1385 (Miss. 1991) (quoting *Hinds County Democratic Exec. Comm. v. Muirhead*, 259 So. 2d 692, 695 (1972)).

¶40.    Following the injunction plea lies the crux of this case: whether a political party or candidate can dictate how Mississippi Code Section 23-15-575 can be enforced, *vel non*. Such a determination would require a court to determine if the claim is justiciable. If the claim is in the nature of a political question or requires a legislative determination, it is not subject to judicial review. This Court has explained that Mississippi follows the political-question doctrine which originated from *Marbury v. Madison*, providing:

18

> The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.

*Ghane v. Mid-South Inst. of Self Defense Shooting, Inc.*, 137 So. 3d 212, 217 (Miss. 2014) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170, 2 L. Ed. 60 (1803)). *See also In re Hooker*, 87 So. 3d 401 (Miss. 2012). Under the political-question doctrine, this Court cannot review "controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Ghane*, 137 So. 3d at 217 (quoting *Japan Whaling Ass'n v. American Cetacean Soc.*, 478 U.S. 221, 230, 106 S. Ct. 2860, 92 L. Ed. 2d 166 (1986)). *Baker v. Carr* set forth six factors which "indicate the existence of a nonjusticiable political question." *Ghane*, 137 So. 3d at 217-18 (quoting *Baker v. Carr*, 369 U.S. 186, 217, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962)). The first factor, "a textually demonstrable constitutional commitment of the issue to a coordinate political department," applies to the case *sub judice*. *Id*.

¶41.    An examination of the history of Section 23-15-575 and its predecessors reveals substantial changes by the state Legislature. Petitioner pleads that SREC and CREC failed to enforce Mississippi Code Section 23-15-575. It reads, "[n]o person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he participates." Miss. Code Ann. § 23-15-575 (Rev. 2007). Section 23-15-575 was derived from 1942 Code Section 3129, which experienced no changes from its adoption in 1906. *See* Miss. Code § 3717 (1906). Before the century-old law was repealed, it provided the following:

No person shall be eligible to participate in any primary election unless he intends to support the nominations in which he participates, has been in accord with the party holding such primary within the two preceding years, and is not excluded from such primary by any regulation of the State Executive Committee of the party holding such primary. Any member of the party holding such primary, or any primary election officer, may challenge any person offering to vote, and cause him to answer, under oath, questions relating to his qualifications. Any elections officer of the precinct may administer oath to such challenged person; and false testimony given upon such inquiry shall be perjury and punishable as such; nor shall any elector be allowed to vote who has sold or offered to sell his vote or influence, directly or indirectly for the support or defeat of any candidate or measure voted on that year, nor any who that year has paid or offered to pay anything for another's vote or influence for or against any candidate or measure.

Miss. Code § 3129 (1942).

¶42. Until the statute was repealed, the law provided a mechanism for enforcement at the polls, complete with the penalty of perjury for a violation. When today's statute was enacted, the enforcement teeth were extracted, a legislative policy choice.

¶43. In 2006, the Democratic Party launched a constitutional challenge to Section 23-15-575. *See **Miss. State Democratic Party v. Barbour***, 529 F. 3d 538 (5th Cir. 2008); ***Miss. State Democratic Party v. Barbour***, 491 F. Supp. 2d 641 (N.D. Miss. 2007), *overruled on other grounds by **Barbour***, 529 F. 3d 538. Since that time, neither of the major political parties has sought to adopt procedures to enforce Section 23-15-575, nor has the Legislature addressed the concerns of the United States district judge. In ***Barbour***, before deciding that Section 23-15-575 was unconstitutional, United States District Judge Pepper wrote:

Mississippi law regarding the power to change election procedures supports the plaintiffs' position that regardless of what actions the Executive Committee have taken, they can only act when expressly authorized by the Mississippi Election Code . . . ."All nominations for state, district, county and county district officers made by the different parties of this state shall be made by primary elections. All primary elections shall be governed and regulated by the

20

election laws of the state in force at the time the primary election is held."

*Barbour*, 491 F. Supp. 2d at 658-59 (quoting Miss. Code Ann. § 23-15-291).

¶44.   He forewarned that the "election procedure or lack thereof" was a problem that the Legislature "may want to address." *Barbour*, 491 F. Supp. 2d at 660. He found that:

> Since the State of Mississippi does not have mandatory party registration, unlike the twenty-nine other States with a closed primary, and since Mississippi does not have mandatory voter identification for all primary elections in order to verify that the voter in question is in fact a member of the subject party, there is no practical way to enforce § 23-15-575 language. . . .

*Barbour*, 491 F. Supp. 2d at 660. This continues to be true, especially in light of the Legislature having repealed the enforcement provisions and taken no action since. The state Legislature is the only state magistracy with that power. Out of respect for our Constitution and that branch of government, courts should stand down. *See* Miss. Const. art. 1, § 1-2.  The Legislature has failed to fashion a law to effectively prevent party raiding. The allegation is that the State Republican Party failed to prevent party raiding. But any political party is estopped from creating rules that do not conform with the State Election Code. For a court to declare otherwise would overstep its authority.

¶45.   Finally, under the United States Constitution, it is the State Legislature, not the judiciary, which must establish election laws. "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. art. 1, § 4, cl. 1.

¶46.   Courts are often called upon to determine if a statute, rule, or regulation has or has not been breached, but only the Legislature has the power to establish the ground rules. This

21

Court has stated, "'It is not the policy of this state to have elections and other political matters of government reserved to legislative discretion to be interfered with by the judges and officers of the judicial department of the government . . . .'" *In re Wilbourn*, 590 So. 2d 1381, 1384 (Miss. 1991) (quoting *Gibbs v. McIntosh*, 78 Miss. 648, 649, 29 So. 465, 465-66 (1901)).

¶47.    Finally, courts do not determine political questions. *See Ghane v. Mid-South Inst. of Self Defense Shooting, Inc.*, 137 So. 3d 212, 217 (Miss. 2014) (quoting *Japan Whaling Ass'n v. American Cetacean Soc.*, 478 U.S. 221, 230, 106 S. Ct. 2860, 92 L. Ed. 166 (1986)). Given these truths, this petition should have been dismissed by the special appointed judge. A court has no authority to provide a set of dentures for this "paper tiger," i.e., Section 23-15-575. The trial court should have dismissed the petition for lack of jurisdiction.[1]

**COLEMAN, JUSTICE, DISSENTING:**

¶48.    Having reviewed the history of our election challenge law and what pronouncements the Court has made regarding the doctrine of *stare decisis*, I would hold that *Kellum v. Johnson*, 115 So. 2d 147 (Miss. 1959), is not binding precedent in the instant case, and, therefore, its twenty day filing deadline cannot be judicially grafted into Mississippi Code Section 23-15-923. Since *Kellum* was decided, the Legislature has amended other statutes within the Election Code, materially changing the Election Code, and the Legislature has amended Section 23-15-923, broadening its scope. In my opinion, the changes are too substantial and material for *Kellum* to survive them. Therefore, with respect, I dissent.

---

[1]Courts must raise issues of jurisdiction, even if the issue must be raised *sua sponte*. *Common Cause of Miss. v. Smith*, 548 So. 2d 412, 414 (Miss. 1989).

22

¶49. Although our cases have discussed *stare decisis* for decades, *see **Caves v. Yarbrough***, 991 So. 2d 142, 152 (¶ 7) (Miss. 2008), our authoritative pronouncements take us only so far.

> Thus, our precedent applying *stare decisis* may be summed up as follows: Even though this Court's previous interpretation of a statute was (in the current Court's view) erroneous, we must continue to apply the incorrect interpretation unless we consider it "pernicious," "impractical," or "mischievous in . . . effect, and resulting in detriment to the public."

> Unfortunately, having stated what must be found to prevent application of stare decisis, this Court has offered no guidelines for finding or identifying these prerequisites (pernicious, impractical, mischievous, etc.). A justice on this Court might reasonably conclude that some of the definitions of mischievous or pernicious apply to all of this Court's prior opinions with which that justice disagrees.

*Id.* at 152 (¶¶ 38-39) (citations omitted). The ***Caves*** Court agreed with the reasoning of ***Lorillard, a Division of Loew's Theatres, Inc. v. Pons***, 434 U.S. 575, 580-81 (1978), where the United States Supreme Court wrote, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." ***Caves***, 991 So. 2d at 153 (¶ 42). Interestingly, although agreeing with the ***Pons*** Court's reasoning, which was restricted to enactment without change, the ***Caves*** Court expanded upon it and held that *stare decisis* would apply when a statute was either re-enacted without change *or* amended. ***Caves***, 991 So. 2d at 153-154 (¶ 42). The ***Caves*** Court's holding also expanded our earlier *stare decisis* pronouncement in ***Thomas v. McDonald***, 667 So. 2d 594 (Miss. 1995), wherein the Court wrote, "When this Court interprets a statute, and the statute is retained in subsequent codes *without amendment* by the Legislature, our interpretation becomes, in effect, part of the statute." *Id.* at 597 (emphasis added); *but see **Crosby v. Alton Ochsner Med. Found.***, 276 So. 2d 661, 670 (Miss. 1973)

23

(writing that *stare decisis* applies when the statute is repeatedly reenacted in "essentially the same language.")

¶50.    Although, pre-***Caves***, the rule had been established for when a statute is re-enacted *without change*, Mississippi case law has contemplated but not yet established a clear test for the post-***Caves*** question of whether interpretation of the statute by the Court becomes a part of the statute – applying *stare decisis* – when the Court has interpreted a statute and the Legislature subsequently changes the statute or related statutes.  The ***Crosby*** Court wrote that the Court's interpretation becomes part of the statute when the Legislature "repeatedly re-enact[s] [the statute] in essentially the same language." ***Crosby***, 276 So. 2d at 670; *see also* ***Kitrell v. O'Flynn***, 33 So. 2d 628, 628 (Miss. 1948) ("That decision became in effect a part of the statute when it was reenacted in substantially the same language by Section 3536, Code 1906, and by its retention in all subsequent codes.").  The Court also has considered whether the change is material, as the plurality states.  ***Bank of Monticello v. L. D. Powell Co.***, 159 Miss. 183, 130 So. 292, 293 (1930) ("[T]hese statutes have been several times re-enacted without material change since the decision in ***Beckett v. Dean***.");  ***Adams v. Colonial & United States Mortgage Co.***, 34 So. 482, 507 (1903) (holding that the mere addition of the words "or employed in any kind of trade or business" were not a material change).  The Court has expounded on the test for defining a substantial or material change, stating:

> Where the provisions of a statute are carried forward and embodied in a codification or revision, in the *same words*, or which are *substantially the same and not different in meaning*, the latter provisions will be considered as a continuance of the old law and not as a new or original enactment, and this is true both where there is an express declaration to that effect in the codification or revision, and also in the absence of such declaration.  This rule applies although the statute brought forward has been simultaneously repealed by the

24

codification or revision. The effect of the continuance of the old law is that *all rights and interests thereunder are preserved*.

*State Tax Comm'n v. Miss. Power Co.*, 160 So. 907, 909 (1935) (emphasis added). The Court in *Mississippi Power* considered the language and its meaning, but it also considered the current "effect" of the original interpretation, stating that the rights and interests afforded under the original interpretation must still be present. *Id.*

¶51. The plurality relies on *McDaniel v. Beane*, 515 So. 2d 949 (Miss. 1987), stating the *McDaniel* Court held "that the prior judicial interpretation was engrafted into the statute" because the statutes were "re-enacted into current law without substantial change." (Pl. Op. ¶ 26). The *McDaniel* Court also wrote, "Where validly enacted statutory language is brought forward in new codes or amended versions of the original statutes, prior interpretations thereof remain *persuasive*, that is, in the absence of some indication in the new amendment or enactment that prior interpretation should no longer be credited." *McDaniel*, 515 So. 2d at 951 (emphasis added). Thus, under Mississippi precedent, amended statutes with changed language have been held to be merely persuasive, not binding.

¶52. The United States Supreme Court has debated whether the addition or elimination of one word in a statute makes the old interpretation of the statute binding. *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011, 2018 (2012) ("Congress eliminated the very term – 'domicile' – on which the appeals courts had founded their imputation decisions."). While I concede that, under the instant facts, Section 23-15-923 does not turn on any one word having being omitted or added by the Legislature, the rule promulgated by *Holder* aids in further defining a "material" or "substantial" change: "That alteration dooms respondents' position, because the

25

doctrine of congressional ratification applies only when Congress reenacts a statute without *relevant* change." **Id.** (emphasis added).

¶53. The **Kellum** Court wrote that "different parts of a statute reflect light upon each other and statutory provisions are regarded as in pari materia where they are parts of the same act. Hence, a statute should be construed in its entirety, and as a whole." **Kellum**, 115 So. 2d at 150 (quoting 50 Am. Jur., *Statutes*, § 352). In essence, the **Kellum** Court states, and I think we cannot ignore, that one section of an act does not exist in a vacuum; it is affected by and interpreted with other sections within the same act, *i.e.*, the Election Code.

¶54. Since **Kellum** was decided, Section 3144 has been re-enacted and amended as Section 23-15-923. Miss. Code Ann. § 23-15-923 (Rev. 2007); Miss. Code § 3144 (1942). Section 23-15-923 has been expanded, no longer limiting the grounds for relief to "allegations of fraud." *See* Miss. Code Ann. § 23-15-923; Miss. Code § 3144 (1942). Accordingly, the purpose of the statute has substantially changed and broadened.

¶55. At the time of **Kellum**, the Court relied heavily on two additional statutes to derive legislative intent for Section 3144. First, the Court relied on Section 3143, which explained how a candidate may contest a primary election for a "party to any county or beat office" on the charge of fraud. Miss. Code § 3143 (1942). Section 3143 required a challenge to be brought within twenty days. Second, the Court relied on Section 3287, which provided a twenty day deadline for "district attorney or other state district election." Miss. Code § 3287 (1942).

¶56. Within the modern Election Code, two statutes provide for a twenty day filing deadline. First, Section 23-15-921 states in pertinent part:

26

[A] person desiring to contest the election of another person returned as the nominee of the party to *any county or county district office*, or as the nominee of a legislative district composed of one (1) county or less, may, within twenty (20) days after the primary election, file a petition . . . .

Miss. Code Ann. § 23-15-921 (Rev. 2007) (emphasis added). Second, Section 23-15-951 states: "[A] person desiring to contest the election of another person returned as elected to any office *within any county*, may, within twenty (20) days after the election, file a petition . . . ." Miss. Code Ann. § 23-15-951 (Rev. 2007) (emphasis added). Section 23-15-951 also provides that "the election of district attorney or other state district election be contested, the petition may be filed . . . within twenty (20) days after the election." *Id.*

Thus, the only two statutes today with express twenty day deadlines are for the primary election for a county and for the general election within a county or for a district election.

¶57.   At the time of ***Kellum***, the two statutes with twenty day deadlines were for county primary elections and the district attorney general elections. ***Kellum*** covered a primary election for the democratic nomination of the District Attorney of the Seventeenth Circuit. Thus, Section 3287 did not apply, because it was for a general – not a primary – election. *See* Miss. Code § 3287 (1942). I think it defensible for the ***Kellum*** Court to then interpret a twenty day deadline into Section 3144, when a larger, general election had a twenty day deadline under Section 3287 and a smaller "county or beat office" election had a twenty day deadline under Section 3143. The only remaining statute with an election contest time limitation was Section 3289, which limited a contest for a statewide general election for the Mississippi House of Representatives and Senate to thirty days. *See* Miss. Code § 3289; Miss. Code Ann. § 23-15-955 (Rev. 2007). Section 3289, unsurprisingly, was not considered by

the **Kellum** Court; **Kellum** involved a primary for a district attorney election consisting of five counties, not a statewide general election.

¶58.    Today, the Election Code contains other deadlines for filing contests to elections.  To contest the qualifications of a candidate for different types of elections, the Election Code provides separate deadlines:

> (1) Any person desiring to contest the qualifications of another person who has qualified pursuant to the provisions of Section 23-15-359, Mississippi Code of 1972, as a candidate for any office elected at a general election, shall file a petition specifically setting forth the grounds of the challenge not later than *thirty-one (31) days after the date of the first primary election* set forth in Section 23-15-191, Mississippi Code of 1972.
>
> (2) Any person desiring to contest the qualifications of another person who has qualified pursuant to the provisions of Section 23-15-213, Mississippi Code of 1972, as a candidate for county election commissioner elected at a general election, shall file a petition specifically setting forth the grounds of the challenge no *later than sixty (60) days prior to the general election*. Such petition shall be filed with the county board of supervisors, being the same body with whom the candidate in question qualified pursuant to Section 23-15-213, Mississippi Code of 1972.
>
> (3) Any person desiring to contest the qualifications of another person who has qualified pursuant to the provisions of Section 23-15-361, Mississippi Code of 1972, as a candidate for municipal office elected on the date designated by law for regular municipal elections, shall file a petition specifically setting forth the grounds of the challenge no later than *thirty-one (31) days after the date of the first primary election set forth in Section 23-15-309*, Mississippi Code of 1972. Such petition shall be filed with the municipal commissioners of election, being the same body with whom the candidate in question qualified pursuant to Section 23-15-361, Mississippi Code of 1972.

Miss. Code. Ann. § 23-15-963 (Supp. 2014) (emphasis added).

¶59.    The current *stare decisis* jurisprudence does not require much for a statutory change to be deemed substantial or material.  The Supreme Court held the change must be "relevant."

**Holder v. Martinez Gutierrez**, 132 S. Ct. 2011, 2018 (2012).  When **Kellum** was decided,

28

three statutes had deadlines on filing an election contest. *See* Miss. Code §§ 3143, 3287, 3289. Today, the Legislature has added three more deadlines on contesting elections after the primary vote that were not in effect at the time *Kellum* was decided. *See* Miss. Code Ann. 23-15-963. Chief among the statutory changes since *Kellum* is subsection (1), Section 23-15-963. Subsection (1) allows a person to contest the *qualifications* of a party after a primary election for thirty-one days. Accordingly, considering the implementation of further election contest deadlines and the broadening of the scope of Section 23-15-923 to include contesting the primary on any general grounds, relevant changes have been made to the Election Code. In short, *Kellum* is not binding precedent today.

¶60.    As described above, the current Election Code now contains many more statutes with filing deadlines longer then twenty days, and the only statutes with twenty day deadlines are for elections much smaller than the election in the case *sub judice*. The election at issue is a statewide primary election. Moreover, the chairman of the State Republican Executive Committee certified the results and transmitted the tabulated statement to the Secretary of State thirteen days after the election, which was late. The certified party candidate was not declared until thirteen days after the election, and under the *Kellum* rule, the challenging party would have one week to gather enough information on a statewide election to file a challenge. Application of the *Kellum* twenty-day deadline, as McDaniel argues, could limit and even eliminate a candidate's opportunity to contest an election if there was delay in the executive committee's declaration.

¶61.    For the forgoing reasons, I am of the opinion that Section 23-15-923 and the Election Code informing *Kellum* have changed substantially and materially. Thus, I would hold that

29

the doctrine of *stare decisis* does not mandate the application of the ***Kellum*** twenty-day rule.

¶62.   Further, given that the Election Code now contains several other deadlines for contesting an election that are greater than twenty days, I would hold that the statute in question here, Section 23-15-923, contains no deadline.  The rule in Mississippi is clear: "The courts have neither the authority to write into the statute something which the legislators did not write therein, nor to ingraft upon it any exception not included by them."  ***Balouch v. State***, 938 So. 2d 253, 260 (Miss. 2006).  Notably, Section 23-15-923 is the *only* statute in the Election Code that does not contain a deadline.  Moreover, the Legislature amended Section 23-15-923 to specifically state it pertains to "more than one (1) county or parts of more than one (1) county" and did not implement a deadline.  Miss. Code Ann. § 23-15-923.  Accordingly, I would reverse the trial court's dismissal of McDaniel's challenge as untimely.

**LAMAR, J., JOINS THIS OPINION.**